## CHELSEY *v.* THE STATE.

1. Where there is not a completed act, but only an attempt, and the crime consists of the intent with which the attempted act was done, it is necessary that the indictment should charge and the evidence prove the existence of such criminal intent.

2. But where there has been a completed act, as for example a killing, the law supposes that the person intends the natural, rather than the intended, consequences of his act. .

3. In such cases "the evil intention will be presumed, and need not be alleged, or, if alleged, it is a mere formal averment which need not be proved. The intent is nothing more than the result which the law draws from the act, and requires no proof beyond that which the act itself supplies."

4. If, therefore, A puts poison in flour with intent that it shall be cooked into bread and eaten by B, but the same is taken by C, and death results from the use thereof, A will be guilty of murdering C, even though he had no malice against him. .

5. The indictment was not subject to the demurrer presented; nor was there error in charging and refusing to charge on the subject of intent.

6. The pleas in abatement were properly overruled, it appearing that the indictment was actually returned into open court, though no entry was made on the minutes at the time.

7. The court properly disallowed the challenge to the array, it appearing that the two panels of jurors had been properly drawn, and that the jurors who were excused constituted a part of those drawn in excess of those needed to make the full panels. '

8. There was no allegation or proof that jurors regularly drawn, and which the defendant had a right to insist should be put upon him in the panel, had been excused; or that a deficiency improperly occasioned had then been supplied by talesmen.

9. The evidence warranted the verdict, no error of law was committed, and the court properly refused to grant a new trial.

Argued November 21,—Decided December 9, 1904. .

Indictment for murder.    Before Judge Freeman.    Troup superior court.    September 5, 1904.

The indictment against Young Chelsey charged that he unlawfully, wilfully, feloniously, and with malice aforethought did make an assault upon Arthur McKamie by putting "rough on rats," an arsenic poison, in sufficient quantities to produce death, into a sack of flour, with the intention and for the purpose of having the same cooked into bread, presented to and eaten by said Arthur; that the same was so cooked and presented, and was eaten by said Arthur, and from its effects he died. The defendant demurred on the ground that the indictment did not allege facts constituting the crime of murder, but only the crime of assault, and failed to

allege any intent to kill.    The demurrer was overruled.    There was a plea in abatement, on the ground that the minutes failed to show that the indictment had been returned into open court. On the hearing of this plea it appeared from the testimony of the officer that the indictment had in fact been returned by the qualified bailiff of the grand jury, and received from him by the clerk in open court, during the May term, 1904, though it had not been entered on the minutes at the time of the hearing, May 10, 1904. The court refused to sustain the plea.    There was a challenge to the array, because the minutes failed to show that the two panels of traverse jurors had been drawn as jurors for the present term; and because the names of seven jurors regularly drawn for the present week were not on the list of jurors furnished the defendant, and if these seven had been excused, they were not legally excused.    From the evidence on this plea it appeared that 36 jurors were drawn and summoned; that their names were on the minutes, but the page containing the same had not been signed by the judge at the time of trial; that the two panels of twenty-four put upon the defendant contained only the names of jurors who had been regularly served; and that some of the seven referred to in the motion had been excused from service.    On the trial on the merits it appeared that the defendant had, in what he claimed was a spirit of play, fired into a window of a house occupied by Lou McKamie, a woman with whom he was living, and who was an aunt of the deceased; that the shooting was not at any one in the building; that the woman was provoked, and something was said about defendant being arrested.    The contention of the State was that this talk aggravated him, and he at once purchased a package of "rough on rats;" that afterwards he had access to a pantry in which was contained a sack of flour; that next morning the woman made bread from the flour; that it was eaten by Arthur McKamie, one of the inmates of the house; that he was immediately made extremely ill; that when the defendant learned of this fact he attempted to conceal the flour; that McKamie died the same day; that his stomach, the uneaten bread, and parts of the flour in the sack were each analyzed and found to contain arsenic in quantities sufficient to have occasioned death.    There was also testimony that "rough on rats" did contain arsenic, and was a deadly poison; though the witness had

not analyzed packages of "rough on rats" recently, and of course had not analyzed the contents of the package purchased by the defendant, it being impossible to find any of the contents other than what was contained in the sack of flour and the bread. The defendant was found guilty. A motion for a new trial was made, because the court charged, in effect, that if the defendant did the acts complained of, with intent to poison Lou McKamie, he would be guilty, even though Arthur McKamie ate the bread intended for her, and whether he had any malice against Arthur or not; and because the court refused to charge that if the poison was put into the flour with the intent that it should be eaten by Lou McKamie and not the deceased, then the defendant would not be guilty as charged in the indictment, and the jury should acquit him. The defendant excepts to the judgment overruling his motion for a new trial.

*Hatton Lovejoy*, for plaintiff in error. *John C. Hart, attorney-general*, and *H. A. Hall, solicitor-general*, contra.

LAMAR, J. (After stating the foregoing facts.) There are many decisions construing indictments for murder as defined by modern statutes, in which it is held essential to charge an intent to kill. But this grows out of the fact that, under these statutes, murder in the first degree is limited to cases where the killing is with deliberate and premeditated malice. But these rulings do not apply to indictments under the Penal Code, § 60, and at common law, where the killing is murder if the malice aforethought is implied, as well as to cases where the malice is express. The allegation that the act was done unlawfully, feloniously, and with malice aforethought is sufficient to characterize the killing as murder. Compare Cox *v*. People, 35 N. Y. 502; People *v*. Giblin, 115 N. Y. 196; Schaffer *v*. State, 22 Neb. 560. Besides, Penal Code, § 929, was intended to obviate the necessity for that strictness of pleading formerly required. As construed in *Newman* v. *State,* 63 *Ga.* 534, this indictment was good against the demurrer. For it was there held that "the rule as to the sufficiency of an indictment is this: if all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad. But if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good."

In his charge the judge used the illustration of one recklessly shooting into a crowd, or throwing a heavy timber on a sidewalk where people are passing, as given in *Cook* v. *State*, 93 *Ga.* 201, and charged, as there, that in cases like these it is not "required that there should exist any ill-will or express malice. The law implies malice from the act, and declares the killing to be murder." We find no error in this instruction. It was applicable to the theory of the case arising from the evidence offered by the State.

The defendant attacks the charge, in view of his theory, on the ground that there was no intent to kill Arthur, but, if anything, an intent to kill Lou McKamie. He contends that the court erred in failing to instruct the jury that if the evidence showed that the defendant intended to kill her and not the deceased, they should acquit. But the act includes the intent. A person is in law supposed to intend the natural consequences of his act; and if he maliciously and unlawfully puts poison into a sack of flour, with the expectation that it is to be cooked into bread and eaten, he is conclusively presumed to have intended the death of any one who eats the bread and dies from the effects thereof. In placing the poison where it could be eaten, and with the intent that it should be eaten by the woman, the defendant was attempting to commit a felony. The law, as well as reason, prevents him from taking advantage of his own wrong, or excusing himself when the unlawful act strikes down an unintended victim. In legal contemplation the intent follows the act through to its legitimate result; and the original malice is transferred from the one against whom it was entertained to him who actually suffered the consequences of the felonious act. Compare *Johnson* v. *State*, 92 *Ga.* 39 (5), where it was said, in a case much like the present, that putting poison into coffee intended for the wife, but actually taken by the husband, "betrayed a reckless disregard of his life, equivalent to an actual intention deliberately to kill him, and this meets in terms the definition of express malice as given in the statute." See also Commonwealth v. Hersey, 2 Allen, 180, where the court draws the distinction between attempts with a specific intent, in which the intent must be alleged and proved, and those complete acts which are rendered penal. In the last class of cases "the evil intention will be presumed, and need not be al-

leged, or, if alleged, it is a mere formal averment, which need not be proved. In such case the intent is nothing more than the result which the law draws from the act, and requires no proof beyond that which the act itself supplies." *Gallery* v. *State*, 92 *Ga.* 463; *Stovall* v. *State*, 106 *Ga.* 447. -

5. The other grounds of the motion may be more briefly treated. The plea in abatement was properly overruled. The evidence showed that the indictment as a fact had been duly returned. · The failure to make an entry on the minutes was an irregularity which was cured by the testimony of the bailiff and the clerk. The same is true as to the entry of the list of jurors on ·the unsigned minutes. *Cribb* v. *State*, 118 *Ga.* 316. Nor was there a good challenge to the array. The panels put upon the defendant had been regularly drawn in the method prescribed by law. There were more jurors drawn than were required to fill the panel. The fact that some of the number in excess were excused afforded no reason for challenging the array of those left. The evidence was amply sufficient to warrant the verdict. Even if the chemist had not recently made an analysis of a package containing "rough on rats," such analysis as he had made, coupled with the analysis of the flour, bread, and contents of the stomach, was sufficient to support the allegations in the indictment.

*Judgment affirmed. All the Justices concur.*