## 1377. HAGOOD v. THE STATE.

1. Where the indictment charges the fraudulent conversion of several sums of money, proof of fraudulent conversion of one or more is sufficient.

2. The court did not unduly restrict the right of cross-examination in refusing to allow a purely abstract question on a subject about which there was already concrete and positive evidence.

3. Where a request to charge is fully and accurately covered in the general charge, the refusal of the request is immaterial and without error.

4. A request to charge, although it contains a correct abstract principle of law, is properly refused, where it may be misleading or confusing in its application to the facts of the particular case.

5. The words "fraudulent conversion," constituting an essential element of the crime of larceny after trust delegated as defined by the Penal Code, are synonymous with the words "taking with intent to steal" in cases of ordinary larceny. Proof of fraudulent conversion necessarily proves both act and intent, or "the union of act and intention," in the commission of the crime. Where the court repeatedly instructs the jury that the evidence must show, beyond a reasonable doubt, the fraudulent conversion of the money, or some part of it, which has been intrusted to the defendant, it is not necessary to go beyond the statutory definition of this crime and tell the jury that the appropriation or conversion must be made with intent to steal the money.

6. Where a principal intrusts his agent with bills for collection and the agent collects the bills, the agent is, in legal contemplation, intrusted by the principal with the money collected.

7. An indictment under § 194 of the Penal Code need not allege, and the proof need not show, that any demand was made upon the defendant for the money or property alleged to have been fraudulently converted.

8. In the absence of a timely request, it was not reversible error, under the facts of this case, for the court to omit from the charge to the jury specific reference to the effect and weight of proof of good character.

Indictment for larceny after trust, from Chatham superior court—Judge Seabrook. August 15, 1908.

Argued October 8,—Decided October 26, 1908.

*Garrard & Meldrim,* for plaintiff in error.

*W. W. Osborne, solicitor-general, W. L. Clay,* contra.

HILL, C. J.  George S. Hagood was indicted by the grand jury of Chatham county for a violation of section 194 of the Penal Code. This section reads as follows: "If any person who has been intrusted by another with any money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, or any other article or thing of value, for the purpose of applying the same for the use or benefit of the owner or person delivering it, shall fraudulently convert the same to his own use, he shall be punished," etc. The indictment contained twenty-one counts, varying the charge only in the amount of money alleged to have been intrusted and fraudulently converted. On his trial the jury found him guilty, and he thereupon filed a motion for a new trial, based on the general grounds and eleven special grounds.

To an intelligent consideration and determination of the questions made in the motion, a general statement of the facts proved by the State is necessary. Hagood was a collector for the Western Union Telegraph Company at Savannah, Georgia, and the indictment charges, that in this capacity he was intrusted by the company with $365.27 in money, the property of the corporation, for the purpose of applying it to the use and benefit of the corporation, by safely keeping the money and accounting for the same, and paying it over promptly to the owner; that after having been so intrusted with the money for the purposes aforesaid, he did wrongfully and fraudulently convert said sum to his own use; the indictment, as before stated, charging in separate counts the fraudulent conversion of separate amounts, aggregating $365.27. Hagood's duty as collector for the company was to take the bill or statement of accounts against each customer of the company for telegraphic services, and present the bill or account to the customer, and collect the amount due. Sometimes Hagood would copy, in his own handwriting, these bills or accounts, in small pass-books or account-books, like grocers' account-books, belonging to a customer. He collected money on the bills or ac-

6

counts, sometimes receipting on the original bill, and sometimes writing receipts in the customer's pass-books, and still again in receipt books or forms disconnected with the bills or pass-books. It was his duty, after having collected this money, to turn it in to one Galvin, who was the bookkeeper or cashier of the company. In turning in money so collected, Hagood made, in his own handwriting, memoranda purporting to show the amounts collected from the various customers who owed the bills given him for collection. The company kept in its Savannah office a record book of bills, with the name of each customer and the monthly bill against each customer. This book was kept by Hagood, who made the entries in it. The evidence for the State showed the following method of procedure by Hagood: He would present to a customer the correct bill, collect the full amount thereon, and turn in a less amount, which less amount would be stated in his memoranda or report of collections, as the amount collected, and would be entered by him in the record book of bills, as the amount of the bill given him for collection. Thus, the money he turned in to Galvin, the cashier or bookkeeper, while less than the amount of the bill given to him for collection, and less than the amount actually collected by him, would correspond with the memoranda or report of collections, turned in by him to Galvin, the cashier, and would also correspond with the incorrect amount of the bill, entered by Hagood in the record book of monthly bills. The amount claimed to have been embezzled by Hagood was in each instance the difference between the amount of the true bill and the amount of the alleged falsified bill, entered by Hagood in the record book. To illustrate: take the first item proved by the State, which is covered by the second count in the indictment, this item being the amount of the bill or account against Duckworth. A bill against Duckworth for the month of May for $11.21 was given to Hagood for collection. He copied this bill in Duckworth's pass-book, and, in a separate receipt book belonging to Duckworth, he receipted him for the amount of this bill, $11.21. Hagood then made a memoranda report of his collections, showing a collection from Duckworth of $4.21; and this $4.21 he paid over to the cashier, Galvin. He entered up in the monthly record book of bills the amount of $4.21, as Duckworth's bill for May. This shows that he collected $7 more than he re-

ported, and more than, according to Galvin's testimony, was turned in to the company by him. To cover up this shortage, he made a false return of the money collected, and made a false entry in the record book of bills.

It is unnecessary to set out each case of shortage alleged and proved by the State. The proof shows twenty instances in all, of alleged shortages in collections from eight different customers, covering a period of time from September, 1906, to September, 1907, the method of procedure in these cases being similar substantially to that used by Hagood in the instance of the Duckworth collection. The aggregate amount of shortage did not equal the aggregate amount charged in the indictment, the amount proved by the State being less than $100. When Hagood was charged with the shortage, he denied any shortage, claiming that he had paid every cent collected by him to the company. He had been in the employment of the telegraph company for ten years, and the company's officers who were witnesses testified that during this time his reputation and conduct had been good. The defendant introduced no evidence. He made a statement in which he denied his guilt, attempted to explain the apparent discrepancy between the amounts collected by him and the amounts paid over to the company, attributed the apparent shortages in the accounts to the loose and careless manner in which the books were kept by the company, and asserted that four of his friends had paid for him to the Western Union Telegraph Company, or to the National Surety Company for the Western Union Telegraph Company, $200, in settlement of the claim of $900 which the Telegraph Company made against him. He asserted that he paid this amount because of the threat made to have him arrested and prosecuted for this crime, of which he protested his entire innocence. The prosecution, in rebuttal of the statement of the defendant, introduced evidence denying that any demand had been made on him for $900, or that any threat had been made to prosecute him, and evidence that the shortage claimed by the company was $231.27, and that the Western Union Telegraph Company had never received any money from the defendant or from any one for him in settlement of this shortage. The prosecution further proved a confession made by the defendant of his misappropriation of a portion of the money on one of the accounts

turned over to him for collection. The books of the telegraph company showing the accounts against its customers, which had been turned over to the defendant for collection, were all introduced in evidence, also receipts showing collection by Hagood from these customers, and his memorandum reports of collections.

This summary of the evidence is sufficient to show that the verdict is supported, and that the general grounds of the motion for a new trial are without merit, and that this court ought not to grant a new trial, unless some material and prejudicial error of law was committed by the court in the course of the trial; and, for the purpose of determining this question, we will now take up and consider each one of the special assignments of error made in the motion for new trial.

1. To prove one of the allegations in the indictment,—that the defendant had collected a bill of $11.85 from the Herman Coal Company,—a bill against M. S. Herman for that amount was tendered in evidence. The defendant objected to the introduction of this bill, upon the ground that there was no apparent relation or connection between M. S. Herman and the Herman Coal Company. The objection was overruled, and this ruling is assigned as error. The ruling was right. It was a question for the jury whether the evidence offered related to the same bill alleged to have been collected and fraudulently converted by the defendant. The documentary evidence shows, that the bill given to Hagood for collection was made out against M. S. Herman, and that Hagood reported a collection from Herman & Brothers, and, in his record book of bills, made an entry that the bill was against the Herman Coal Company. It was for the jury to say whether all these entries related to the same bill. Moreover, the monthly record book of bills or accounts was in evidence, showing the names of all the customers, and the jury, by inspection, could see whether in fact the bill was due by M. S. Herman or by the Herman Coal Company. But whether this evidence was admissible or not is wholly immaterial, for it is well settled that the State is not compelled to prove, where separate items of larceny are charged in the indictment, every one of such items, or to prove, where an aggregate amount is charged to have been fraudulently converted by the defendant, the whole amount so charged. And there was other evidence introduced by the State, and unobjected

to by the defendant, which tended to prove that other items and sums of money collected by him were fraudulently converted. *Jackson* v. *State,* 76 *Ga.* 569 (10) ; *Green* v. *State,* 114 *Ga.* 918 (41 S. E. 55) ; 25 Cyc. 102, par. 4, and many cases cited in the note.

Counsel for the defendant, on cross-examination of the cashier of the telegraph company, propounded to him this question: "You find, by reference thereto [the indictment], in the first portion of it, it is alleged that the Western Union Telegraph Company intrusted this man with $365.27 in money. You are the bookkeeper; have you got any entry on any book that he was intrusted with $365.27 ? If so, produce it." The State objected to this question on the ground of irrelevancy, and the court sustained the objection. We think the court did right. The books were all in evidence and spoke for themselves. Besides, it was not claimed that the defendant was at any time intrusted with this sum, or that he had at any time converted this sum; but it was charged that he had been intrusted with various sums which he had fraudulently converted, aggregating this sum. If the defendant had been intrusted with any of the amounts as alleged, and had fraudulently converted any one of them to his own use, how was it material or relevant that the books did not show any single entry that he was intrusted with $365.27 ? We think it wholly immaterial whether the books showed an entry, in one sum or in separate sums, that the defendant had been intrusted with $365.27. Even if the witness had not been able to show, in reply to the question, any entry, on any book, that the defendant was intrusted with $365.27, his failure would not have been at all significant or illustrative of the defendant's guilt or innocence. 25 Cyc. 102.

2. The cashier of the company, while under cross-examination, was asked by the defendant's counsel, "Where a man does not attend to his business, is not fair and honest in the discharge of his work, he is not retained?" This question was objected to because irrelevant, and the objection was sustained. It is insisted by defendant's counsel that the court, in refusing to allow him to ask this question, unduly restricted his right of cross-examination; that this witness was the principal witness against the defendant; that he had known the defendant in his official relations

for ten years, knew his character for honesty in such relations, and was therefore entitled to prove in this manner, if he could, that the defendant's character was good; and that the question excluded by the court was for the purpose of laying the foundation for proof by this witness that the defendant's character was in fact that of an honest, trustworthy employee, and that he had been retained so long a time for that reason. Now the evidence was undisputed that the defendant had been employed by the telegraph company for ten years, and this very witness had testified that during this time he had had opportunity for knowing his general character, conduct, and reputation, and during that time it had been good. In view of this testimony, we think the question propounded was purely an abstract one, and that any argument that might have been drawn from an affirmative answer could have been more effectively drawn from the foregoing testimony of the witness. It is difficult to see how the opinion of the witness could add any force or effect to the self-evident conclusion that an employee who did not attend to his business, and was not fair and honest in the discharge of his work, would not be retained, or add additional weight to the argument, to be drawn from the retention of an employee by an employer for a long time, that such employee did attend to his business and was fair and honest in the discharge of his work.

3. The fourth and fifth grounds in the motion for a new trial allege error in the refusal of the court to charge that, "in order to convict the accused, it is necessary to prove the creation of the trust described in the indictment," and "it is further necessary, in order to convict the accused, to prove the fraudulent breach of the trust described in the indictment." Unquestionably these requests embody correct principles of law pertinent to the issues involved; but both principles were explicitly, accurately, and fully given in the general charge to the jury.

4. Error is assigned on the refusal of a request to charge the jury as follows: "You may look and see if any payment of money was made by the accused to the Western Union Telegraph Company, with a view of determining whether the alleged breach was or was not fraudulent." The charge requested is somewhat confusing and calculated to mislead the jury. If it referred to the payment of the sums which had been collected by the defendant

for the company, it was pertinent, but the principle of the request was fully covered by the general charge. Counsel for plaintiff in error, in his argument and in his brief, insists that this request was based upon the statement of the defendant that, when charged with his shortage, he had paid $250 to the company, and that the payment of this sum was a circumstance from which the jury might determine the innocence or criminality of the act of taking. The company denied that the $250 had been paid to it; but whether it had been paid or not was immaterial. The evidence is undisputed that when it was claimed to have been paid by the defendant, not to the telegraph company, but to the National Surety Company, a conversion of the telegraph company's money had been consummated, and the conversion discovered. Even if the defendant had then made restitution in full or in part, his act of restitution would have in no wise illustrated his purpose in the previous conversion of the company's money. The offense was complete when the money was fraudulently converted, and no restitution by the defendant thereafter could have had any legal effect. *Birt* v. *State,* 1 *Ga. App.* 150 (57 S. E. 965); *Keys* v. *State,* 112 *Ga.* 392 (37 S. E. 762, 81 Am. St. R. 63).

5. The court was asked in writing to charge as follows: "Before you can find the accused guilty, you must find that there was a joint operation or union of act and intention, or criminal negligence;" and the refusal of this request is assigned as error. Of course, the request embodied an elementary principle of law. Both the act and the intention must be shown, before any criminal charge is proved. We do not think, however, that it is necessary for the judge to state this principle in the language of the code; if he charges in such language as to convey to the jury this elementary principle of law it will be sufficient. Even without being told so, it is probable that any jury of ordinary intelligence would know that intention is an essential element of crime. Larceny after trust is a statutory offense. If the indictment charges the offense in the language of the statute, and the evidence proves the charge as laid in the indictment, and the court instructs the jury as to the definition of the offense by the statute, nothing else can be required. Now the court did fully instruct the jury in this case that they must believe, beyond a reasonable doubt, that the evidence established the fraudulent conversion of

the money of the corporation, intrusted to him for its use and benefit. A fraudulent conversion after a trust has been delegated, in the statutory definition of the offense of larceny after trust, is synonymous with the words "taking with intent to steal" in ordinary larceny. The court, in the charge to the jury, made frequent use of the following expressions as descriptive of the character of the act charged against the defendant: "was fraudulently converted to his own use;" "did fraudulently convert the same or some part thereof to his own use;" "after being so intrusted this defendant fraudulently converted such money or a part of it to his own use;" "fraudulently appropriating or converting such money or any part of it to his own use." It seems to us that this language could not have failed to convey to the minds of the jury a clear and perfect conviction that the defendant could not be guilty unless there was proof both of the act and the criminal intent. In our opinion, the definition of this crime by the Penal Code, §194, makes the act of fraudulent conversion, after the delegation of the trust described, the crime; and a criminal intent is necessarily proved from the act itself. In other words, where a fraudulent conversion after a trust delegated has been shown, the evil intention will be presumed; and in such case the intent is nothing more than the result which the law draws from the act, and requires no proof beyond that which the act itself supplies. *Chelsey* v. *State,* 121 *Ga.* 343 (49 S. E. 258). As said by the Supreme Court in *Keys* v. *State,* supra, "the gravamen of the offense of larceny after trust is the fraudulent conversion of the property of another, and therein consists the crime of larceny." We think, therefore, that when the judge, in charging the jury in this case, gave the definition of the statutory offense, and frequently emphasized the fact that the evidence must establish a fraudulent conversion of the money of the company, he fully covered the principle of the request, and left to the jury no room to doubt that the defendant could not be convicted, unless he had converted the money of the company fraudulently and with intent to steal the same. If the correctness of the view here suggested needs any support, it is found in the interpretations which the courts have placed upon statutory offenses similar to that of larceny after trust, as defined by our code. The Supreme Court of California, after quoting the language of a statute sub-

stantially similar to ours, says: "Embezzlement is a statutory offense, and it was not necessary for the court to go beyond the statute and tell the jury that the appropriation or conversion must be made with intent to steal the money." People v. Cobler, 108 Cal. 538 (41 Pac. 401). The Supreme Court of Missouri, in commenting upon a similar statute, said: "It is next objected that the indictment is insufficient for failure to aver the intent with which the defendant converted the money to his own use. Section 3555 does not in specific words make the criminal intent an element of the offense, further than is necessarily included in the words 'convert to his own use,' or 'shall make way with or secrete.' These words must be held to be tantamount to and synonymous with the words 'with intent to defraud,' and to meet every requirement of the allegation of criminal intent." State v. Noland, 111 Mo. 486 (19 S. W. 717). "An instruction that if the jury find from the evidence that the defendant unlawfully, fraudulently, and feloniously converted to his own use money he collected by virtue of his official position, they should find him guilty, was not erroneous as ignoring the criminal intent." State v. Manley, 107 Mo. 364 (17 S. W. 800). We conclude that the words "fraudulent conversion," in the statute, in and of themselves supply the idea of intentional and wilful wrong-doing, and no additional words, not even the general and elementary principle requested, were necessary to impress the jury with the fact. Crawford v. State, 4 Ga. App. 789 (61 S. E. 886).

6. The following extract from the charge of the court is the eighth error assigned: "If you find that the defendant was an employee of the Western Union Telegraph Company, a corporation created under the laws of the State of New York, and that in the course of his employment and the discharge of his duties he collected in the county of Chatham, State of Georgia, money, on the day charged in the indictment, or on any other date or dates within four years prior to the date of indictment, from persons indebted to the Western Union Telegraph Company, and that it became and was his duty to turn the money so collected over and deliver the same to said Western Union Telegraph Company, or to some officer or agent of said Western Union Telegraph Company, the said defendant in that event became, and, within the meaning of the law, was intrusted by the

Western Union Telegraph Company with such sum or sums of
money when the same were by him collected; and if you find
that the defendant did fraudulently convert the same, or some
part thereof, to his own use, you should find him guilty." Three
objections are made to this charge: (1) "The statement by the
court that the defendant 'was intrusted by the Western Union
Telegraph Company,' etc., was the assertion of a fact which was
in dispute, that formed one of the issues in the case, and was
the expression and intimation of opinion by the court." (2)
"The charge that if the defendant was given bills to collect, and
did so collect them, that therefore he was intrusted with such
money, lays down a false principle of law. To be given a bill
to collect is one thing; to be intrusted with money is a different
thing." (3) "The charge is error in that the collection of money
in Chatham county, Georgia, is not sufficient to make the de-
fendant guilty, for that it is not the collection, but the conver-
sion, which determines the venue." In the argument of counsel
and in his brief before this court, only the second of these objec-
tions was presented; and, therefore, we treat the other two as
having been abandoned. There is no merit in this objection.
Giving the bills or statement of accounts due by different per-
sons to the Western Union Telegraph Company was merely an
incident in the collection of the money. The bills or accounts
themselves were of no value. These were simply delivered to
the collector in order that he might get possession of the money
from the different debtors of the company, and the trust dele-
gated to him by his employer was the duty of collecting the
money, and when he collected it from the different debtors he
was intrusted by his employer, who was the owner of this money,
with the money for the purpose of turning it over to the com-
pany. He was not intrusted with the money by those who owed
it to the company, for as to these his position was not one of
trust. The payment to him of the money which the debtor owed
to the telegraph company was the payment of a debt which they
owed to the company; and the money, when it thus came into
his hands, was the property of his principal, and then the trust
was created. The fiduciary relation existed only and strictly be-
tween him and the telegraph company. He had no authority to
make any collection of money except as he was authorized to do so

by his employer; and this charge of the court correctly and accurately stated to the jury the whole law applicable to the gist of this offense,—the trust reposed or delegated and the fraudulent conversion of the money. Instructions similar to the one now under review were approved by the Supreme Court in the following analogous cases: *Haupt* v. *State,* 108 *Ga.* 66 (34 S. E. 831); *McNish* v. *State,* 88 *Ga.* 499 (14 S. E. 865); *Keys* v. *State,* supra.

7. The ninth and tenth grounds of the motion for new trial are fully controlled by the first and fourth divisions of this opinion, except where in the ninth ground it is claimed that the court erred in telling the jury that it was not incumbent on the State to allege or prove that a demand was made on the defendant for the payment of the money which the indictment charges him to have fraudulently converted. It is well settled in this class of cases that it is not necessary to allege or prove a demand. *Goodman* v. *State,* 2 *Ga. App.* 438 (58 S. E. 558); *Keys* v. *State,* supra.

8. The court did not charge the jury the law on the subject of good character, and it is insisted that "this was error because the defendant's good character was one of the main issues in the case and a material defense, and there was evidence to sustain such defense." There was no request to charge as to the legal effect or weight of proof of good character, and the court gave no specific instructions on the subject; nor was the court's attention called to this omission. In support of the contention of the very able attorney for the plaintiff in error that the court should have charged, as a part of the general instructions, the law as to the effect of good character without any request to do so, the case of *Seymour* v. *State,* 102 *Ga.* 803 (30 S. E. 263), is relied upon. In that case the record discloses that an old man, who had theretofore borne an unblemished character, was indicted for rape upon a child of tender years, and was convicted of an assault; and in the language of the Supreme Court, a careful study of the evidence for the State leads to the conclusion that, "at most, a very weak and unsatisfactory case against the accused was made out." The only evidence in his behalf was proof of his good character during his entire life. The judge, in his charge to the jury, completely ignored this defense and made

no reference whatever 'to the law relating to good character, till he was about to conclude his charge, when, upon having his attention called to the matter, he in general terms charged upon this sub- ject. The court held that while the omission to charge specially on this subject of good character was, strictly speaking, not erroneous, yet, because of the peculiar and exceptional facts of the case, such special charge should have been given. Mr. Chief Justice Simmons says, in the opinion: "There are cases where, owing to the peculiar circumstances in which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. . . Such a case is now under considera- tion. The accused submitted evidence that he had borne a most excellent character from his boyhood up to the time of the al- leged offense. This, under the circumstances, was the only way in which he could meet the charge made against him." We are of the opinion that the court in this case should have charged specifically as to the weight which the jury might attach to evidence of good character; but, under the facts of the case, it was not reversible error for him to omit to do so, where his atten- tion was not called to the omission and no request was made to charge on the subject. The situation of the defendant in this case and his ability to meet the charge against him otherwise than by proof of good character is not at all analogous to the situation of the defendant in the *Seymour* case, who was unable to make a defense except by his good character. We do not see why he could not easily have shown, if such had been the truth, that he had in fact paid over to the company every dollar which he had collected for it. Instead of this, his own reports made to the company of his collections show a series of peculations, extend- ing over a considerable period, which are covered up and con- cealed by false entries made in the books by himself. Good char- acter, however strong as a substantive fact of defense, could hardly outweigh the incriminating evidence furnished by this conduct of the defendant. The judge, in his able charge to the jury, told them to "take this case, consider it in the light of all the facts and circumstances and the evidence, and determine the truth of it." And he fully charged also the law of reasonable doubt, and the weight which they might give to the defendant's statement. This would seem to be broad enough to cover the de-

.fense of good character, in the absence of a request for a more specific charge. In *Franklin* v. *State, 69 Ga.* 41 (47 Am. R. 748), the Supreme Court, in a murder case, where the trial judge neglected to charge the jury in reference to the good character of the defendant, but did call attention generally to the testimony for the defense, said, that this was in effect to call the attention of the jury to proof of good character, and that if the defendant wanted a more explicit charge on the subject, it was the duty of his counsel to call the attention. of the judge to the omission. We are driven to the conclusion, from a careful study of all the evidence and the defendant's statement, that the jury in this case did in fact give him the full benefit of his previous good character. In the light of the inculpatory facts and circumstances which he by his own conduct had furnished, proof of his good character and his long and honest connection with the telegraph company could not be deemed sufficient to generate a reasonable doubt as to his guilt, but it was very properly regarded as sufficient to temper justice with mercy. So thought the jury, and they recommended a misdemeanor punishment. So thought the trial judge, and he respected the jury's recommendation; and so thinks this court. *Judgment affirmed. Russell, J., dissents.*