## 5077. LEARY v. THE STATE.

The act of maliciously putting broken glass into food, with intent that the food shall be eaten by another and that he shall in this manner be killed, does not, without more, constitute the offense of assault with intent to murder, when he does not eat the food after the glass has been put into it.

DECIDED OCTOBER 21, 1913.

Indictment for assault with intent to murder; from Lowndes superior court—Judge Thomas. June 6, 1913.

George E. Simpson, Franklin & Langdale, for plaintiff in error.
J. A. Wilkes, solicitor-general, contra.

POTTLE, J. The plaintiff in error was arraigned under an indictment charging him with the offense of assault with intent to murder. Omitting the formal parts, the indictment charged that Jule Leary "unlawfully, feloniously and with malice aforethought, did put broken glass into the collard greens and corn bread of Lucius Zeigler, the said broken glass being a weapon likely to produce death, and the said broken glass being then and there deposited in said collard greens and corn bread with the intent then and there to cause the said Lucius Zeigler to eat the same, and the said acts in and upon the said Jule Leary did thereby make an assault with the intent the said Lucius Zeigler to kill and murder, and the said Jule Leary with said broken glass which he then and there deposited as aforesaid did unlawfully, feloniously, and with malice aforethought, attempt to kill the said Lucius Zeigler, contrary to the laws of said State, the good order, peace and dignity thereof."

The accused demurred on the ground that the facts set forth in the indictment did not constitute the offense of assault with intent to murder; that the indictment failed to charge any overt act indicating that the accused procured and induced the prosecutor to swallow or otherwise use the broken glass, and because the indictment failed to charge how or in what manner said broken glass was deposited or in what manner the same was placed before, or whether it was offered or administered to, the intended victim at all. The demurrer was overruled and the accused was convicted. Within twenty days from the overruling of the demurrer he sued out a writ of error to the Court of Appeals, complaining of the judgment overruling the demurrer, but did not assign error upon any other judg-

ment rendered in the case. In this court a motion was made by the solicitor-general to dismiss the writ of error, upon the ground that the accused could not assign error upon the judgment overruling his demurrer without also excepting to the final judgment of conviction.

1. There is no merit in the motion to dismiss the writ of error. A bill of exceptions may be sued out to this court complaining either of a final judgment or of one which would have been final if it had been rendered as claimed by the excepting party. Civil Code, § 6138. If the demurrer had been sustained, the indictment would have been quashed and this would have been an end of the case. The fact that the accused was convicted and sentence imposed before he excepted to the judgment overruling the demurrer is immaterial. It was not necessary that he should file a motion for a new trial, or that he should except to the final judgment of conviction. Doubtless, if the demurrer was not well taken, the accused was properly convicted and has no just cause of complaint. It would be useless to require him to file a motion for a new trial when no errors of law were committed during the progress of the trial, or to interpose a formal exception to the final judgment of conviction. It is settled by a number of decisions of the Supreme Court that this was not necessary. "A writ of error lies to a judgment overruling a demurrer to the whole bill, notwithstanding the complainants may have proceeded to a hearing and obtained a decree, and though the decree be not excepted to nor any motion made for a new trial." *Lowe* v. *Burke, 79 Ga.* 164 (3 S. E. 449). See, also, *Kitchens* v. *State, 80 Ga.* 810 (7 S. E. 209); *Central Railroad Co.* v. *Denson, 83 Ga.* 266 (9 S. E. 788); *City Council of Augusta* v. *Lombard, 86 Ga.* 165 (12 S. E. 212); *Turner* v. *Camp, 110 Ga.* 631 (36 S. E. 76). Where an exception is made to an interlocutory ruling which is neither final nor would have been final if it had been rendered as claimed by the excepting party, it is necessary to except to the final judgment in the case, before a reviewing court will acquire jurisdiction to pass upon the interlocutory ruling. *Lyndon* v. *Georgia Railway & Electric Co.,* 129 *Ga.* 353 (58 S. E. 1047); *Carpenter* v. *First National Bank of Sandersville,* ante, 497 (79 S. E. 360), and cases cited. In these cases the question raised by the exception was not one which would have finally ended the case no matter which way decided. If the ruling made was a final termina-

tion of the case, or would have been so if rendered as claimed by the excepting party, then this court has jurisdiction to pass upon the exception to the ruling, although no other judgment is excepted to.

2. In *Johnson* v. *State,* 92 *Ga.* 36 (17 S. E. 974), the indictment charged the accused with having committed the offense of assault with intent to murder by putting arsenic and other poison into coffee "and administering the said poisons" to the person named in the indictment. The proof showed that the person thus named drank of the coffee containing the poisons; it was held that the indictment sufficiently charged the offense of assault with intent to murder, and that, under the evidence, the accused was properly convicted. This decision was based upon the English case of Reg. *v.* Button, 8 C. & P. 660. In *Peebles* v. *State,* 101 *Ga.* 585 (28 S. E. 920), it was held: "The act of maliciously putting poison into a well, with the intent that the water thereof shall be drunk by another, and that he shall in this manner be killed, does not, without more, constitute the offense of an assault with intent to murder, when the person whose death was intended never in fact drank of the water after the poison had been introduced into the same." The case of *Johnson* v. *State,* supra, however, was distinguished from the case then under consideration, by reason of the fact that in the *Johnson* case the intended victim actually drank of the coffee. In the opinion the court said: "We think the *Johnson* case and the English case of Reg. *v.* Button, 8 C. & P. 660; cited in support of it, go to the full extent authorized in holding that an assault has been committed in cases of this character. The case in hand closely resembles one where a pitfall has been dug, or a spring-gun set, or a gun loaded, with the felonious intent of depriving another of his life, but where the criminal intent did not proceed sufficiently far to bring the individual whose death was meditated into immediate and present danger." See, also, *Groves* v. *State,* 116 *Ga.* 516 (42 S. E. 755, 59 L. R. A. 598) ; *Chelsey* v. *State,* 121 *Ga.* 340 (49 S. E. 258). The indictment in the present case does not allege either that the intended victim partook of the food containing the bits of glass, or that the accused administered glass to the victim with the intent to kill him. The effect of the ruling in the *Johnson* case, as explained and restricted by the decision in the *Peebles* case, is that in cases of this character there can be no assault unless the poison is administered to the victim,

and there can be no administration of it unless the victim partakes of the substance containing the poison. The present indictment charges merely that the accused put broken glass into the intended victim's food with intent that he should eat it, and did thereby make an assault with intent to kill. There is no averment that the broken glass was administered to the intended victim or that he partook of any of the food in which the glass was contained. This being so, the indictment did not set forth the offense of assault with intent to murder, and the demurrer thereto should have been sustained.                                             *Judgment reversed.*