23960. McCOY *v.* THE STATE.

Decided October 29, 1934.

*McDonald & McDonald,* for plaintiff in error.

*Allan C. Garden, solicitor-general,* contra.

MacIntyre, J. The indictment in this case charges Gertrude White and Sambo McCoy with committing murder by shooting Willie May Leggett with a pistol. Gertrude White pleaded guilty and received a life sentence. Sambo McCoy elected to sever, and was convicted of voluntary manslaughter. The exception is to the judgment overruling McCoy's motion for a new trial, containing only the usual general grounds.

The evidence shows conclusively that Gertrude White shot and killed Willie May Leggett with Sambo McCoy's pistol at about ten o'clock at night in one "Sissy's" yard, where several negroes had assembled. John Cochran testified in part as follows: "Gertrude was by herself when Sambo come up to her. . . Willie May come out after this girl got this pistol from Sambo. . . Sambo didn't give it to her. . . She snatched it out of his hand. . . When he walked up there, she was out there cussing and fussing in the sidewalk . . in front of the house. . . She said she was going to kill all the son of bitches in the house. All I heard Sambo say when he come there with the pistol, he said: 'If you had something like this you could raise hell.' And she snatched it out of his hand. He come up within arm's reach of her with the pistol in his hand. After she grabbed it, Sambo run off in the house. He turned to her and said: 'Now, God damn it, you got the pistol, shoot it.' When Gertrude started to shooting, Sambo tried to get in the house. . . This woman was standing over there with her arms folded up this way. . . Willie May had not made any attack on Gertrude that I had seen. . . She didn't have a weapon. . . She didn't start towards Gertrude. When Gertrude got the pistol she shot her. . . I thought the woman had gone crazy. . . Willie May come from in the house. She wasn't out of the house when Sambo come up there."

Tom Leach testified in part as follows: "I saw Sambo McCoy

and Gertrude White come up there practically together. . . He told her if she wanted to raise hell, to use his gun. . . He told her to go ahead and raise hell with it—if she wanted to kill anybody to go ahead. Gertrude didn't have any other weapon when she got the gun. He didn't specify no special one for her to shoot. . . Sambo told Gertrude if she wanted to raise hell, she could use his gun, and told her to go ahead and kill all of them, and after she got the gun he wanted it back. . . The first word he said was, he offered Gertrude his gun. . . The next thing he said was, he asked me to try and get his gun. back. After he pulled it out in his hand and put it towards her, she didn't have to do nothing but reach out and get it. She wouldn't give it to him. . . I don't know whether Sambo was drinking or not, but Gertrude was drinking. . . I testified that Sambo gave Gertrude the gun. He told her to take the gun and raise hell. . . Sambo handed her the gun and tried to get it back. He didn't try to take it, but asked her for it, and she wouldn't let him have it."

Gertrude White testified in part as follows: "Sambo went with me to Sissy's house. Sambo and I had been drinking that night. . . Sambo told me to take the gun and kill Spider because he had jumped on me. . . Sambo gave me the pistol. . . When this girl hit me I cursed. Willie May hit me; she hit me with a brick. . . I shot the pistol when I first got it. Sambo didn't try to take it away from me; he went running off laughing. . . Willie May stepped on my feet, and I asked her what was the matter. She said she meant to do just what she done. . . And she said: 'You better leave Spider alone.' And I said: 'I ain't studying Spider or you either. . . I don't know whether I was drunk at the time of the shooting.'"

The gist of the defendant's statement to the jury was that Gertrude snatched his pistol from him while he was in the act of transferring it from one pocket to another; that when he "made a break towards her," she drew the pistol on him, and he ran in the house and told her sister to try to get the pistol; that he did not give the pistol to Gertrude; and that he was not drinking.

We have not given the testimony of all the witnesses, or all the testimony of any one witness. We think, however, that we have stated enough of it for the purposes of this decision. The first case cited by counsel for the plaintiff in error is *Walker* v. *State*, 118

*Ga.* 10 (43 S. E. 856). It appears from the headnote of that case that that "the accused, although with the slayer at the time of the homicide, did nothing, by word or deed, to assist in or encourage its commission." Counsel next quote the headnote of *Thornton* v. *State,* 119 *Ga.* 437 (46 S. E. 640), which is as follows: "To constitute one a principal in the second degree, he must not only be present when the crime is committed, but must aid and abet the actual perpetrator of the crime. One who is present when a crime is committed, but neither assists in its commission nor shares in the criminal intent of the perpetrator, is not guilty as a principal in the second degree." We quote from that decision (p. 440): "The evidence for the State shows . . that when Thornton loaned his pistol to Amos he told, or advised, him to kill Gordon with it, if he should again rob Amos at cards. His advice or instruction to kill Gordon was, therefore, conditional, or dependent upon the event that Gordon should again rob Amos at cards. Even granting that there was enough in the evidence to authorize the jury to infer that Amos and Gordon had, subsequently to the loan of the pistol, engaged in playing cards, we think there is nothing in the evidence from which the jury could fairly infer that Gordon had robbed Amos in such a game, or that the killing was in consequence of such robbery. . . The evidence shows that Amos stated to Gordon that he owed him a dime. This Gordon denied, but paid it, saying at the time that he would make some of them shoot him; whereupon Amos immediately shot and killed him." The facts of the case at bar differentiate it clearly from the two cases cited. We quote the second headnote of the case of *Washington* v. *State,* 68 *Ga.* 570: "A woman was present at the stabbing with a knife by another, and furnished the knife with which it was done. She said to the actual perpetrator of the crime, 'Martha, come, shell that God damned nigger, and get clear of her; get your satisfaction:' *Held,* that these facts make such person a principal in the second degree." In that case the defendant gave the principal culprit a deadly weapon, with the suggestion that she kill a particular person. In the case at bar the jury had the right to conclude from the evidence that the defendant gave Gertrude White his loaded pistol, with the suggestion that she "go ahead and kill all of them," and that Sambo meant all of the negroes at Sissy's house. In the one case, the suggestion was that a particular

person be killed; in the other, that any one of a group of people be killed. We think that, within the purview of the law, the defendant in the case at bar participated in the criminal intent of the principal actor just as did the defendant in the *Washington* case, and that the conviction should stand. Surely the defendant is not absolved from guilt because "he didn't specify no special one to shoot."

But it is insisted that the defendant is guiltless because, after giving the woman the pistol, he repented and tried to get it back. We are not impressed with the soundness of this contention. A dangerous and deadly agency had been set in motion, and the matter was beyond the control of the defendant. His repentance came too late to avert the catastrophe which he had instigated. Again, it may be that the jury had the right to conclude from the evidence in the case that the woman was drunk and entirely beside herself, and that the defendant was acting through "an irresponsible agent." See 1 Wharton's Criminal Law (8th ed.), §§ 212 and 218. In this event, the case might be somewhat analogous to that of *Chelsey* v. *State,* 121 *Ga.* 340 (49 S. E. 258), the fourth headnote of which reads: "If, therefore, A puts poison in flour with intent that it shall be cooked into bread and eaten by B, but the same is taken by C, and death results from the use thereof, A will be guilty of murdering C, even though he had no malice against him." We hold that the evidence supports the verdict, and that the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*