BROOKS-PRUITT TIRE COMPANY *v.* BROOKS & ZUKER TIRE COMPANY *et al.*

No. 13707.   September 9, 1941.

*Wellborn Ellis,* for plaintiff in error.

*A. L. Henson* and *J. Herbert Johnson,* contra.

Jenkins, Justice.   ■   Where, in a receivership proceeding, an intervenor asserts a right antagonistic or superior to that of one or both of the parties, the receiver is not merely the hand of the court carrying into execution its orders, but he may and should defend the estate in his possession against such a claim, unless and until it is properly established.   Bosworth *v.* St. Louis Terminal Railroad Asso., 174 U. S. 182, 187 (19 Sup. Ct. 625, 43 L. ed. 941).   A mere recommendation by a receiver in his report that a claim be allowed does not have the conclusive effect of a judgment; and he should, if subsequently revealed facts so require, change such a recommendation, unless some right is lost thereby, and in that event the matter may be determined by the court.   53 C. J. 239, and cit.   In the instant intervention, where the intervenor seeks to set off claims in excess of its indebtedness to the defunct corporation, the receiver was not precluded from contesting the intervention, by the mere fact that his previous report contained a recital, in listing the corporation's liabilities including the intervenor's claim, that "the receiver can not positively verify [such] statement, . . but it is correct to the best of all information, knowledge, and belief; and he recommends that it be relied upon;" and the judge, sitting without a jury, was not precluded by this statement from disallowing the whole or any part of the intervention, in accordance with the evidence.

■   The intervenor sought to set off three groups of claims, in the total amount of $2185.01, against its admitted debt of $2140.30 to the defunct corporation.   The first item of $252.58 represented payments through materials and labor by the intervenor, at the instance of the defunct corporation, to its stockholder on an alleged

646

balance due him by the latter on the agreed purchase-price of $5500 for one half of its capital stock of 1400 shares. These purchased 700 shares, apparently of the par value of $7000, were shown by the minutes of the defunct corporation to have had a "book value" at the time of the purchase of $7878.50. The minutes further showed that $4423.02 of the purchase-price had been previously paid to the stockholder. One half of "the surplus of . . assets over . . liabilities, including capital stock," as defined by the corporation act of 1938 (Code Supp. § 22-1828 (d)), thus amounted to no more than $878.50, so that the total surplus did not exceed $1757. Since the agreed purchase-price of $5500 and the previous payments of $4423.02 far exceeded this amount, the intervenor's payments to the stockholder were illegal, and were properly disallowed.

■ The second group of items, claimed by the intervenor, consists of amounts due by the defunct corporation to creditors, in the total sum of $330.06, which the intervenor claims it paid and took assignments. The bookkeeper of the defunct corporation testified that the intervenor paid these claims, but not until after the receiver was appointed, and that until then they were carried on the books of the corporation. The record does not show any averment or proof of insolvency of the corporation; but the petition for a receiver alleged merely that it "has ceased to exist" by having discontinued doing business, and a receiver was necessary to protect and collect its assets and settle its affairs. The petition alleged a "book value" of assets sufficient to pay off liabilities, and the answer of the corporation denied insolvency, while admitting a willingness to have a receiver. The new corporation act (Code Supp. §§ 22-1877, 22-1878) authorizes a receivership "when any corporation incorporated or reincorporated under this chapter shall . . cease to exist in any manner whatever;" and provides that after payment of costs, expenses, and liens, receivers "shall pay the other debts due from the corporation if the funds in their hands shall be sufficient therefor; and if not, they shall distribute the same ratably among all the creditors who shall prove their debts" as directed by the court. In receiverships based on insolvency, it is the rule, that, "in the absence of statute, the filing of the petition for the appointment of a receiver closes the right to purchase claims and use them by way of set-off when sued by that officer. . . At that moment

the rights of creditors attach; it ceases to be a going concern; the assets are impressed with a trust for the benefit of all alike. Prior thereto, the privilege of buying claims to be used as a set-off continues, even though the assignee may know of the insolvency." *Nix* v. *Ellis,* 118 *Ga.* 345 (7), 348 (45 S. E. 404, 98 Am. St. R. 111); Code, § 28-405; 53 C. J. 103-107, §§ 127-130. Since under the new corporation act, and the averments of the petition, the corporation had ceased to be a going concern, the right of the intervenor to acquire claims against the corporation, and use the full amount as a set-off against the intervenor's own indebtedness, terminated when the petition was filed and a receiver was appointed, the same as in a case of insolvency. Especially would this be true since the act provides that proceeds shall be distributed "ratably" among the general creditors when insufficient to pay them in full. If a claim could be bought after a receivership, and set off at its full face value against a debt of the purchaser to the corporation, there would be no ratable distribution if the assets were not sufficient to pay general creditors in full. However, the mere fact of purchase after the receivership would not deprive the creditors, in occupying the status of the purchased claims, from receiving whatever moneys the receiver would pay to them as the assets might permit. It was error to disallow as an entirety the amount of the purchased claims; but the intervenor should be allowed to set off against its debt to the receiver such amounts as may be paid on those claims, sharing pro rata with like creditors, whenever the proper amounts of such credits may be determined.

The last item of $1602.32, claimed by the intervenor, represents an amount originally due by the defunct corporation to a creditor for merchandise bought on account. A written assignment, made by the creditor to the intervenor the day before the receivership, was in evidence. Under the testimony, this assignment was made "when intervenor took over merchandise and guaranteed payment of the account prior to the receivership." Although the record does not clearly show the nature of the $2140.30 admitted indebtedness due by the intervenor to the defunct corporation, against which it seeks to set off this and other items, counsel for the receiver in their brief concede that "in taking over the merchandise of the [defunct corporation] in the sum of $2140.30, [the intervenor] received merchandise worth this amount;" and

that the intervenor "then assumed the indebtedness in the sum of $1602.32," due by the defunct corporation to the creditor, which claim against the corporation the creditor assigned to the intervenor. Although it thus appears that the intervenor took over the merchandise involved in the transaction, it is conceded that the debt which the receiver claims against the intervenor is the value of this same merchandise. Since the intervenor assumed the corporation's debt therefor and relieved it of liability, and since the intervenor took the assignment before the receivership, it should not have been precluded from setting off the amount of its claim against the claim for the same merchandise.

*Judgment affirmed in part and reversed in part. All the Justices concur.*