HENRY O. HOYT, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

1. An indictment charging a defendant with having received a certain amount of money to be applied for the use or benefit of the bailor, with an allegation that on a certain day the defendant fraudulently converted a specific portion thereof to his own use, is not demurrable on the ground of its being general, vague and indefinite, and that it does not put the accused on notice of what he is called on to answer. It might be that the proof would clearly and definitely show the fraudulent conversion as charged.   But under such an indictment, making the general charge of fraudulent conversion, as stated, evidence is not admissible to prove that the accused had reported to the bailor special payments as having been made to particular persons, and that such payments were not, in fact, made to the amounts so reported, or that there were no such persons as those to whom the payments were reported to have been made.   Each of such fraudulent acts would be a crime, and proof thereof would be sufficient to sustain a conviction, and the indictment should contain specific charges of such acts to authorize the admission of evidence showing they had been committed.
2. Where a defendant is charged with having received money belonging to the State of Georgia to be applied for the use of the Western and Atlantic Railroad in paying for cross-ties, and that he fraudulently converted a portion thereof to his own use, and the defendant files thereto as a special plea in bar, his plea alleging that after said money had been so received by him, a board of commissioners had been appointed under an Act of the Legislature to audit and approve any claim against said road, and that he having a large claim against said road submitted the same to said commissioners ; that upon a hearing thereof the money alleged in the indictment as having been received by him was

charged up against him by said commissioners, and on a full account-
ing before said board, a balance was allowed him; and that he then
and there fully accounted with said road for all the money set out in
the indictment as having been received by him:

*Held,* That the plea was not a special plea in bar against such an indict-
ment; that, under the Act of the Legislature referred to, the board of
commissioners did not have authority to discharge any person from lia-
bility for a criminal act.   The facts set out in the plea would be admis-
sible under a plea of not guilty, and under that plea it would be com-
petent for the defendant to show that he did, in fact, fully and fairly
settle for such money with said board, and that the State received the
benefit thereof by its being deducted from a claim due him by said
road.

3. No officer of the State, or of the Western and Atlantic Railroad, by
entrusting another with money belonging to the State, can make such
person a bailee or fiduciary of the State, and thereby constitute the
State the bailor or person so entrusting, etc., within the intent and
meaning of sections 4356 and 4358 of the Revised Code.   In such a
case the person so receiving the money, if he be a private citizen and
withholds the same after demand, can only be indicted under the Act of
December 14, 1871, and if he be an officer, servant or person employed
in any public department, station or office of Government of this State,
and embezzles, secretes or steals said money, he may be indicted un-
der section 4553 of the Code.

4. The indictment is not sufficient under the Act of December 14, 1871,
because it does not charge the defendant with fraudulently, wrongfully
or illegally receiving the money, nor does it charge him with having
lawfully received the same and with failing to pay within ten days after
a demand, and the indictment was, in fact, found within five days after
the demand is alleged to have been made.

5. Nor is the indictment sufficient under section 4355 of the Code, as it
does not charge the defendant to be an officer, servant or person em-
ployed in any public department, station or office of Government in
this State, etc., as prescribed in said action.

Criminal law.   Embezzlement.   State.   Western and At-
lantic Railroad.   Indictment.   Before Judge HOPKINS.   Ful-
ton Superior Court.   April Term, 1872.

Hoyt was arraigned on the following indictment:

"STATE OF GEORGIA—FULTON COUNTY:

"The grand jurors selected, chosen and sworn for the coun-
ty of Fulton, to-wit:   *   *   *   *   In the name and behalf
of the citizens of Georgia, charge and accuse Henry O. Hoyt,

of the county and State aforesaid, with the offense of fraudulently converting money to his own use without the consent of the owner or bailor, and to the injury of such owner, and without paying to such owner or bailor on demand, the full value or market price thereof, he being a bailee thereof, and entrusted therewith. For that, heretofore, in said county, he, the said Henry O. Hoyt, did receive the aggregate sum of $30,029 85 belonging to the State of Georgia, from Isaac P. Harris, treasurer of the Western and Atlantic Railroad, acting for and in behalf of the State of Georgia, the said aggregate sum being received in parcels at different times during the year 1870, as follows: February 8th, $1,232 00; March 10th, $2,999 90; April 12th, $2,576 60; May 11th, $1,235 10; August 18th, $13,698 65; November 1st, $9,113 20; December 1st, $80 00—the whole of said aggregate sum of money and each and all its parts, being received by the said Henry O. Hoyt, and entrusted to him for the purpose of paying for cross-ties for the use of the said Western and Atlantic Railroad, and a part of said aggregate sum of money, to-wit: the sum of $20,000 00, he, the said Henry O. Hoyt, did, on the 11th day of May, in the year 1872, in said county, fraudulently convert to his own use, without the consent of the State of Georgia, the owner and bailor thereof, and to the injury of the said State of Georgia, and refuse to pay the said State of Georgia the said sum of money or any part thereof, when demand for the same was made, as such demand was in point of fact made on the 11th day of May, in the year 1872, by Alton Angier, as the legally authorized agent of Needom L. Angier, as treasurer of said State, and refuse to pay any part or portion thereof, contrary to the laws of said State, the good order, peace and dignity thereof.

"And the jurors aforesaid, in the name and behalf of the citizens of Georgia, further charge and accuse the said Henry O. Hoyt with having committed the offense aforesaid: for, that heretofore, in ·said county, he, the said Henry O. Hoyt, did receive the sum of $30,029 85, belonging to the State of Georgia, from Isaac P. Harris, treasurer of the Western and

Atlantic Railroad, acting for and in behalf of the State of Georgia, the said aggregate sum being received in parcels at different times during the year 1870, as follows: February 8th, $1,232 00; March 10th, $2,999 90; April 12th, $2,-576 60; May 11th, $1,235 10; August 18th, $13,698 65; November 1st, $9,113 20; December 1st, $80 40—the whole of said aggregate sum of money, and each and all its parts, being received by the said Henry O. Hoyt, and entrusted to him for the purpose of paying for cross-ties for the use of said Western and Atlantic Railroad, and a part of said aggregate sum of money, to-wit: the sum of $141 35, the said Henry O. Hoyt did, on the 11th day of May, in the year 1872, in said county, fraudulently convert to his own use, without the consent of the State of Georgia, the owner and bailor thereof, and to the injury of the said State of Georgia, and refuse to pay the said State of Georgia the said sum of money or any part thereof when demand for the same was made, as such demand was in point of fact made on the 11th day of May, 1872, by Alton Angier, as the legally authorized agent of Needom L. Angier, the treasurer of said State, and refuse to pay any part or portion thereof, contrary to the laws of said State, the good order, peace and dignity thereof.

"April Term, 1872.

(Signed)                    "JOHN T. GLENN,
                                 "Solicitor General.

" W. L. GOLDSMITH, Prosecutor."

The defendant demurred to said indictment upon the following grounds, to-wit:

1st. Said indictment is insufficient, in that it charges the defendant with the offense of "fraudulently converting money to his own use without the consent of the owner or bailor, and to the injury of such owner, and without paying to such owner or bailor, on demand, the full value or market price thereof."

2d. It does not charge the defendant with having fraudulently converted money to his own use, without the consent

of the owner and bailor, and to the injury of such owner, and without paying to such owner and bailor the full value or market price thereof.

3d. It contains two counts insufficiently stated in this, that the first count does not sufficiently charge any specific offense, and the second count refers to the offense set out in the first count, as the offense aforesaid.

4th. Said second count in said indictment is insufficient in law, in this, that it does not charge any offense against this defendant.

5th. The indictment does not charge with sufficient certainty any offense known to the laws of Georgia.

6th. It does not allege with sufficient certainty that the said Hoyt was entrusted with any money or other thing of value, belonging to the said State of Georgia, or any other person.

7th. It does not state with sufficient certainty that said Hoyt was entrusted with any money or other thing of value as the property of the State of Georgia by any person or officer having power or authority under the laws of said State of Georgia to so entrust money to said Hoyt.

8th. It does not charge that said money was entrusted to said Hoyt, or deposited with him as the property of the State of Georgia.

9th. There is no offense as charged in said indictment known to the laws of said State, as the statute under which said indictment is founded does not contemplate the conversion of money belonging to the State by any officer or servant of the State.

10th. It does not allege that the said defendant failed to purchase cross-ties for which said money was so entrusted to him for the purpose of purchasing.

The demurrer was overruled, and the defendant excepted.

The defendant pleaded as follows: " And now, at this term of the Court, comes the defendant, in his own proper person, and for plea in bar of any further or other proceedings under said indictment, saith, that he ought not to be held to

a further answer to the charge contained in the same, for that heretofore, to-wit: on the 24th day of October, in the year 1870, the General Assembly of this State, at its regular session, passed an Act entitled "An Act to authorize the lease of the Western and Atlantic Railroad, and for other purposes therein mentioned," which Act received the assent of the Governor on the day and year last aforesaid, which then and there became a law of the land, and·said Act then and there created a board of commissioners, consisting of Benjamin Conley, Dawson A. Walker, and George Hillyer, Esqrs., to whom was referred the auditing, investigation and passing upon all debts, liabilities and claims pertaining to the affairs of the Western and Atlantic Railroad, and giving them full jurisdiction of said affairs, and authorizing the Governor to draw his warrant on the treasury for any amount which should be found due against said Western and Atlantic. Railroad.

"And now, this defendant avers that all the amounts of money claimed to be due to the State of Georgia in said bill of indictment, and all the transactions of this defendant during the time of his connection with the Western and Atlantic Railroad, were submitted to said commissioners above stated this defendant having a large unliquidated claim against the State of Georgia, all of which had not, at that time, been settled up, but being, in a large part, paid, the same was then and there submitted to said board for the adjudication and settlement of the same ; that the specific charges made in said ·indictment were all considered·by said auditing committee, and the settlement between this defendant and the State of Georgia fully and fairly made in accordance with the provisions of the Act aforesaid. And this, this defendant is ready to verify. Wherefore he prays judgment of the Court and puts himself upon the country.

"And for further plea, this defendant says, that before the demand alleged to have been made by the agent of the treasurer of this State, as set forth in said indictment, and after the said Benjamin Conley, George Hillyer and Dawson A. Walker, Esqrs., as commissioners, had duly qualified and en-

tered upon the discharge of their duties, this defendant, having a large unliquidated demand against the Western and Atlantic Railroad, on account of cross-ties, wood, and other claims, this defendant went and appeared before said commissioners, duly appointed for that purpose, and upon a solemn and deliberate examination of his accounts for money received by him, payments made by him, on account of said Western and Atlantic Railroad, into which said examination and hearing the said several sums of money stated and charged in said indictment went, and were heard and were passed upon and charged up against this defendant by said commissioners, and after a full accounting, this defendant was allowed a considerable balance, and so this defendant avers, that before said commissioners, duly appointed, and upon a full hearing, this defendant then and there fully accounted to and with said Western and Atlantic Railroad for all the money charged to have been placed in his hands, and alleged against him in said indictment; all of which this defendant is ready to verify. Whereof he prays judgment of the Court, that the said indictment may be quashed, and puts himself upon the country."

On motion of the Solicitor General, the plea aforesaid was stricken. To which ruling the defendant excepted, upon the ground that said plea tendered an issuable fact which should have been submitted to a jury.

The defendant pleaded not guilty.

After the first witness for the State was sworn, and when he was about to be examined, the defendant objected to any evidence being admitted under said indictment, upon substantially the same grounds as were taken in the demurrer aforesaid. The objection was overruled, and the defendant excepted.

John C. Aycock, William L. Headrick and Thomas L. Horne, were introduced as witnesses for the State, for the purpose of testifying as to cross-ties furnished by them for the Western and Atlantic Railroad, and payments made to them therefor by the defendant, showing the difference between the amounts actually paid to them and the amounts as claimed to

have been paid by the defendant, as appear from the entries made in his wood and cross-tie book.

This evidence was objected to by the defendant upon the following grounds, to-wit:

1st. Because it was offered to impeach the testimony offered by the State, to-wit: the book introduced as to the amount of cross-ties and wood bought by said defendant.

2d. Because the indictment did not allege any fraudulent conversion of money entrusted to said defendant to pay for cross-ties and wood purchased from either of said witnesses.

3d. Because the defendant was not put on notice by said indictment of the fraudulent conversion of any money entrusted to his care to be paid to said witnesses.

The objections were overruled, and the defendant excepted.

The cross-tie and wood books kept by said defendant, introduced by the State, showed payments made to O. Nichols, S. Haney and M. Horne. The Solicitor General proposed to ask the three witnesses aforesaid if they knew any persons of said names on the line of the Western and Atlantic Railroad? The defendant objected to this question upon the following grounds, to-wit:

1st. Because said question was irrelevant to the issue before the jury.

2d. Because the defendant was not put on notice that he was to answer for the conversion of money entrusted to him for either of the parties aforesaid.

3d. Because, in effect, the defendant was called upon, in the admission of evidence of this character, to prove himself innocent of the charge made against him in said indictment, without knowing before trial what charge he had to meet.

4th. Because if there did not exist any such men as were referred to in said books, defendant was guilty of another offense than the one charged, and could not be called upon to answer more than one offense in the same indictment.

The evidence being voluminous and unnecessary to an understanding of the decision is omitted.

The jury found the defendant guilty, and recommended

Hoyt *vs.* The State of Georgia.

him to the mercy of the Court. The defendant moved for a new trial upon each of the aforesaid grounds of exception. The motion was overruled, and the defendant excepted.

GARTRELL & STEPHENS; PEEPLES & HOWELL; A. B. CULBERSON; D. P. HILL, for plaintiff in error.

JOHN T. GLENN, Solicitor General; HILL & CANDLER, for the State.

TRIPPE, Judge.

1. It is not necessary to notice all the different points made in the demurrer to the indictment. What we do pass upon are sufficient to dispose of all practical questions in the case. The indictment is not demurrable as being vague and indefinite, in that it does not put the accused on notice of what he is called on to answer. It charges him with having received a certain amount of money to be applied for the use or benefit of the bailor, and that on a certain day he fraudulently converted a specific portion thereof to his own use, without the consent of the owner, and to his injury, etc.. These are almost the exact words of the statute, and that the indictment is not vague or uncertain, may be illustrated by one suggestion. Suppose, on the trial under such an indictment, the proof was, that the sum charged as being fraudulently converted, was not only not in fact used, as by the terms of the bailment it was to be used, for the benefit of the bailor, but, by the confession of the accused, was converted by him as charged, and that he, on account of such offense, was endeavoring to flee. Would not this proof sustain the charge, and would it not be competent evidence under the charge? Could the accused complain that he was not put on notice of what he was charged with? But, under an indictment making a general charge of fraudulent conversion, as stated, we do not think it competent for the prosecution to prove that the accused had reported to the bailor special payments as having been made to particular persons in the performance of his duty

as bailee, and that such payments were not, in fact, made to the amounts so reported; or, that there were no such persons as those to whom the payments were reported to have been made. Each of such fraudulent acts would be a crime, and proof thereof would be sufficient to sustain a conviction, and the defendant should be put upon notice of such charge. Unless this be the rule, no bailee could ever have anything like a fair opportunity either to defend or explain. Take, for instance, such a case as this. A person invests another with a trust, giving him money to pay his debts, not specifying who the creditors are, or to expend the money for certain general purposes for the benefit of the bailor. The bailee proceeds to discharge his duty, and makes his report, showing a full discharge of what was in his hands. He is indicted generally as fraudulently coverting, on a certain day, the whole, or one-half the amount entrusted to him. He may have made and reported payments to fifty or one hundred persons. On the trial, two or three of those he reported as having received payments from him, are offered as witnesses to prove that he did not pay them the amounts reported; or it is proposed to prove that two or three of such reported persons are fictitious names, that the witnesses do not know such persons. No charge of fraudulent conversion has been made as to such payments, or as to there being no such persons. The defendant is suddenly confronted with the proposition of such proof, without notice or preparation for defense as to acts, each of which constitutes a crime, and proof of either being sufficient to sustain a conviction on an indictment founded thereon. He might, with proper notice be fully prepared to prove the identity and real existence of the persons, whom other witness are ready to swear they do not know, for fifty men may truly swear they do not know certain persons, and they do not believe they exist, whilst many others would satisfactorily prove that there were such. Surely the opportunity should be afforded a defendant to do this in such a case, by the charge being so framed as to give proper notice of the offense in-

tended to be proved. Unless this were so, the greatest injustice might and would be often done.

If the State be aware of such acts, so as to be prepared to prove them on the trial, it would have the same knowledge and the same testimony so as to frame the indictment, that it may contain whatever is necessary to put the accused on notice of that with which he is charged, and of which he is to be convicted. Even in civil cases such a rule of pleading obtains. No trustee who has made his returns is liable to have them attacked, unless the notice is given in the proceedings against him. If he has omitted to make a proper charge against himself, a specific allegation must be made thereof, by way of *surcharging*, so as to hold him liable. If he has given himself a credit which is false, or to which he is not in law entitled, the proceedings against him must allege it by a charge *falsifying* it. If this be the liberal rule in a civil case, there should be as equally a benign one in criminal procedure. The law has surely as high regard for the proper guards for the protection of life and liberty, as it does for the protection of property. Let it be noted, that the indictment in this case charges the receipt of various sums of money at different times during the year 1870; and that on the 11th May, 1872, the defendant fraudulently converted a large portion thereof to his own use, etc. The testimony offered and objected to was, that the defendant's books showed payments to certain persons in 1870, and that there were no such persons. There were three of this class that were claimed to be proven not to exist. If it were a fact, in each case it was a crime proved, upon which a conviction could be founded. There were then three distinct offenses, each one independent of the other, each sufficient upon which to rest indictment and conviction; and yet of neither was there any charge or notice until the testimony was offered. The same may be said of the testimony as to larger credits being given by the defendant to himself, than the amounts actually paid. That was sufficient to show fraudulent conversion in each case, and to support indictments charging them, and convictions thereon. It might not be

going too far to say that it is a good if not the true rule, that where a specific act is an offense under the penal Code, and that act is to be made by proof the ground on which a conviction is to be had as constituting the crime to be punished, that specific act should be charged in the indictment. It is not necessary that the indictment should allege or show the testimony which is to be used on the trial, but it should set forth sufficiently the act committed by the accused, which constitutes the offense charged, and for which act the conviction is sought.

If the affidavits offered by the defendant, in the motion for new trial, be true, and it does not appear but what they are true, they illustrate strongly the virtue of such a rule. The prosecution pretty strongly proved, as it appeared, that there were no such persons as three of those to whom defendant, by his books, had made payments. Such testimony must have weighed with great force on the minds of the jury. For if, in fact, there were not any such persons, the defendant must have stolen these amounts, or rather, embezzled it. The indictment contained no allegation of such acts, and it is to be presumed that the first notice defendant had that they would be raised against him, was after the trial commenced—indeed, as to the particular proof, from the mouths of the witnesses on the stand. He had no time to meet such proof, he may not have known where his witnesses were, or had no opportunity to procure them. With all this testimony, of such terrible import, before the jury, he was convicted. After the trial the affidavits of two of those very three persons, whose non-existence was thus proven, were obtained, showing not only they were veritable human beings, but had actually received payments from the defendant. It is true, the amounts specified in their affidavits as being paid them did not exactly correspond with defendant's books. But the same may be said, as to that fact, as was remarked of the other witnesses, who stated that their amounts did not correspond. At least, the defendant should have had the opportunity to have had those witnesses examined, and by any proper means to refresh

Hoyt *vs.* The State of Georgia.

their memories as to the amounts, provided it could have been done.

2. The special plea in bar was properly overruled as such. The Act of October 14th, 1870, only appointed commissioners to audit and approve any outstanding claims there might be against the Western and Atlantic Railroad at the time of the lease. The board of commissioners had no power to discharge, by any act of theirs, any person from liability for a criminal act. The plea amounts to nothing more than that the defendant had accounted with an authorized tribunal, and had settled for all the money that had been entrusted to him. The very facts pleaded could have been proven under a plea of not guilty, and had they been shown under such a plea, might have established his innocence, provided no criminal act had been committed by him in fraudulently converting said money, or any part thereof, previous to said settlement. In *McCoy vs. The State*, 15 *Georgia*, 205, it was decided that a payment to the owner, after a fraudulent conversion had been committed, did not excuse; that the crime was complete, the larceny accomplished, when the money was converted. If so, then a settlement with the commissioners would not purge the defendant of an offense already committed.

Again, a bailor may appoint an agent to make a settlement with his bailee, or he may make it himself. But if the bailee were to impose on him false or forged receipts, and an acquittance given the bailee founded thereon, that settlement would not be a discharge of the bailee for his fraudulent conversions, which were then unknown to the bailor. He would not thereby be protected against either a civil or criminal proceeding. Nor would it be pleadable in bar, for every fact and issue which could arise under the general issue, would also arise under that plea. So, also, in this case, the State, with this plea filed, could set up every fact which it could under the plea of not guilty. A plea of former acquittal or former conviction would be a plea in bar; for if the simple fact pleaded be proved, it bars all other inquiry, any investigation into the guilt or innocence of the accused, and the record es-

tablishing such former judgment could not be met by a reply of fraud.   Once convicted and punished, or acquitted, the defendant cannot be dealt with again for the same charge.

3. We do not think that an officer of the State, or of the Western and Atlantic Railroad, could, under sections 4356 and 4358 of the Revised Code, constitute a person as the bailee of the State, so as to make the State the bailor within the meaning of those sections, except by express provisions of law.   Even if the officer so entrusting another with property of the State did so by authority of law, it might then be a question whether the person receiving it, if he embezzled it, etc., would not be more properly indictable under section 4355, as an officer, servant or employee.   For if the officer who so entrusted another had legal authority so to do, that officer would, *quo ad hoc*, have the power to appoint the servant or employee, and that person would sustain the relation as defined in section 4355.   The punishment would be as great on him for his criminal default in the premises as under either of the sections 4356 and 4358.   If the appointing officer had no legal authority to create the trust, then his appointee would be his own agent or bailee, and such a case is provided for by the Act of December 14th, 1871, entitled " An Act to make it penal to withhold money or personal property belonging to the State of Georgia."

4. The indictment is not sufficient under this Act, because, in the first place, the Act makes it penal for such a person to fraudulently, wrongfully or illegally receive such property or money.   The indictment does not make any such charge.   In the next place, the Act makes it a criminal act for one who legally receives the money or property, to fail to pay or deliver the same to the treasurer of the State or his agent within *ten* days after a demand.   This indictment was returned by the grand jury within *five* days after the demand therein is alleged to have been made.   So it comes within no part of that Act.

5. Nor can it be sustained under section 4355 of the Revised Code, as it does not charge the defendant to be an " offi-

cer, servant or person employed in any public department, station or office of government of this State," etc., as prescribed in said section.

Judgment reversed.