32921. LEWIS *v.* THE STATE.

DECIDED JUNE 21, 1950. REHEARING DENIED JULY 31, 1950.

*Brackett & Brackett, Howard, Tiller & Howard, R. B. Pullen, Rache Bell,* for plaintiff in error.

*Paul Webb, Solicitor-General, W. Paul Carpenter, William Hall,* contra.

MacINTYRE, P. J. 1. On a true bill, returned on April 22, 1949, Julian H. Lewis was indicted for larceny after trust under Code § 26-2809. He was convicted and sentenced to serve from two to five years in the penitentiary. His motion for a new trial was overruled and he excepted.

The jury was authorized to find that from March 1947 until June 1948, the defendant was a bookkeeper employed by D. A. Eubanks, doing business as Eubanks Appliance Company, in a fiduciary capacity. The duties of the defendant were to keep books, to handle money, to make bank deposits, to make up pay rolls and to pay employees, including himself. In the course of his employment, the defendant was specifically entrusted as a fiduciary bailee with the money or funds of his employer which were paid into the Eubanks Appliance Company for the designated purpose of applying the same for the use and benefit of Mr. Eubanks. See *Scarboro* v. *State*, ante, p. 273. During the period the defendant was intrusted with such money in the prosecutor's business, there accumulated an aggregate shortage in the cash account in the amount of $4,316.96, and an aggregate shortage in the pay-roll account in the amount of $174.97, as evidenced by the books kept by the defendant himself. The defendant had two personal bank accounts—in separate banks. He deposited $3,759.99 in the First National Bank and $7,828.96 in the Bank of Fulton County during the period from September 1947 through June 1948, making a total of $11,588.73, although he was earning only $200 and $220 per month during that ten-month period. The defendant made no deposits during June 1948, but he deposited $3,670.18 ($855.94 in the First National Bank and $2,814.14 in the Bank of Fulton County) during the month of March, 1948.

Concerning State's Exhibit No. 1, which was a check in the amount of $147.04, drawn on the account of the Eubanks Appliance Company in the First National Bank of Atlanta by D. A. Eubanks, and payable to the order of W. L. Hamilton and endorsed by Hamilton and J. H. Lewis, W. L. Hamilton

testified that he was an employee of the Eubanks Appliance Company and that this check was his salary check which he asked Lewis to cash in order that he could pay the Eubanks Appliance Company $10.45 on a bill which he, Hamilton, owed for a pressure cooker. He stated that Lewis took the check, placed it in the cash register of the Eubanks Appliance Company and gave him from that cash register the difference between the amount of the check ($147.04) and the payment made ($10.45), namely, $136.59, and that Lewis gave him a receipt for the $10.45 payment. Hamilton stated unequivocally that Lewis did not cash the check out of his own pocket or personal funds, but that he cashed it out of the cash drawer of the Eubanks Appliance Company.

In explanation of this same transaction with Hamilton, the defendant in his statement to the jury replied that he had loaned Hamilton some money and that when Hamilton gave him the check to cash, he took the money out of his own pocket and put the check in his pocket, giving Hamilton the difference between the check and the amount which Hamilton owed him and that thereupon Hamilton then handed him the $10.45 in payment of the bill which Hamilton owed the Eubanks Appliance Company, and that he, Lewis, the defendant, went over to the cash register and wrote the receipt for the payment on Hamilton's account. From the evidence and the defendant's statement to the jury, which was in effect that this was his individual money and that he did not restore any part of it to the cash register of the Eubanks Appliance Company since he did not take it out of the cash register, but that he did place the $10.45 payment in the cash register, the jury was authorized to find from Hamilton's version of the transaction that Lewis took the money from the cash register and that he did not restore any part except the $10.45 payment and to further find that he converted this money to his own use.

Concerning State's Exhibit No. 3, which was another salary check in the amount of $197.46, drawn by D. A. Eubanks on the account of Eubanks Appliance Company in the First National Bank of Atlanta, payable to the order of W. L. Hamilton, endorsed by Hamilton, and endorsed by the defendant Lewis for deposit only to the account of Julian H. Lewis, Ham-

ilton testified that this check was cashed by Lewis for him from a cash box, or drawer, at the Eubanks Appliance Company, known as the General Electric Credit Corporation cash, or credit, drawer. Referring to the transaction of cashing this check for Hamilton, the defendant in his statement to the jury, admitted that he had cashed the check from such drawer, but explained: "I would take the money out of the General Electric account because Mr. Eubanks did not want it to go through the books, and he would not permit me to buy a money order because it cost money, and I would have to endorse it [the check] to get a cashier's check [to send the money to General Electric Credit Corporation]." Mr. Eubanks had explained in his testimony in the case that in the operation of his business, he frequently sold merchandise on contract and transferred or hypothecated the contracts with General Electric Credit Corporation, and that he, though not compelled to do so, frequently collected money on the contracts which had been transferred to the General Electric Credit Corporation, and that these collections were kept in a separate drawer. At such times as he received money or checks for the General Electric Credit Corporation, he, or his employees, made a slip which was sent to the General Electric Corporation and a duplicate of that slip was pinned to the money or the check received. At such times as he delivered these funds to the General Electric Credit Corporation, it was his practice and arrangement with the corporation that he take the cash to his bank and purchase a cashier's check made payable to the General Electric Credit Corporation, but if there were checks in this drawer, it was necessary for him or his wife, the only two persons so authorized, to endorse any such checks before the bank would accept them in payment for the cashier's check. Thus, we see, that if it should happen that one of the checks which Eubanks received for the General Electric Credit Corporation should happen to be no good, with his endorsement on it, he would be held accountable to the bank for the amount of such check. If money or checks were taken from the General Electric Credit Corporation's cash drawer after a slip had been made for it or them and forwarded to the corporation, the corporation would, of course, hold Eubanks accountable for the difference. From the

defendant's statement the jury was authorized to infer that he had endorsed the check in question for deposit to his own account and had given his own check to cover the difference, or the jury was authorized to find that he only endorsed the check to be deposited to his own account and that he did not cover the resulting shortage in the General Electric Credit Corporation's account with his own check. It follows that the jury was authorized to find that in both of the transactions in which Lewis cashed checks for Hamilton, Lewis converted money belonging to Eubanks, and that this was, under the other evidence, done secretly and fraudulently. The jury was authorized to infer and find from the evidence that the defendant made numerous and regular wilful miscalculations of the weekly pay rolls, and surreptitiously misappropriated the overplus to his own use. This fraudulent practice was detected June 4, 1948. The pay roll for that week was $402.68, but was miscalculated by the defendant to be $420.59, an error of $17.91. The defendant became drunk en route from the bank. He had the $17.91 overplus in his pocket when he was located. Mr. Eubanks recovered the $17, but never recovered the $0.91, although the defendant repeatedly promised to make payment. He also promised to repay the overplus from other miscalculations of the pay rolls, but breached his promise. The total shortage in the pay-roll account amounted to $174.97, which included the $0.91. A portion of the shortage in the pay-roll account was due to raises in the defendant's own salary which he gave himself fraudulently and without the consent of his employer. Mr. Eubanks, the employer, made a demand on the defendant for the shortage of $4,356.79, which included the $0.91, after the audit had been made of the books, but the defendant failed and refused to repay the moneys. The defendant was not required to furnish his employer with a monthly written financial statement; but the defendant prepared and delivered to Mr. Eubanks a financial statement for the calendar year 1947. This statement was incorrect and spurious, and, inferentially, was prepared by the defendant for the purpose of shrouding in secrecy the misappropriations of which he was guilty.

The defendant contends that "in the light of the prosecutor's testimony . . that [the defendant] was an employee, and

in the course of his duties he handled funds, should be sufficient to bring this case under the provisions of Code § 26-2808 without question." The fact that the defendant as an individual was entrusted by Eubanks, an individual, with a sum of money for a designated purpose and he converted the same to his own use and was indictable under Code § 26-2809, which reads as follows: "Any person who has been intrusted by another with any money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton, or other produce, or any other article or thing of value, for the purpose of applying the same for the use or benefit of the owner or person delivering it, who shall fraudulently convert the same to his own use, shall be punished by imprisonment and labor in the penitentiary for not less than one year nor more than five years; except that where the money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton, or other produce, or any other article or thing of value, so fraudulently converted does not exceed $50 in value, the punishment shall be as for a misdemeanor"—does not mean that the defendant may not have been indictable under some of the other embezzlement sections of the Criminal Code. *Bulloch* v. *State,* 10 *Ga.* 47, 58 (54 Am. D. 369).

When there are two or more statutes under which the defendant may be indicted and the punishment provided by the different statutes is dissimilar in severity, it makes no difference to the defendant that the penalty is different under the different sections of the Code. That which concerns him are the acts with the commission of which he is charged. The defendant does not have the right to say under which statute he prefers to be tried. This is the right of his sovereign State.

The fact that the defendant was a clerk or servant of the master or employer does not mean that he cannot be indicted, as here, under Code § 26-2809 as an individual where money was intrusted to him for a designated purpose, although he may have been indicted under another section at the option of the State. Section 26-2808, the section under which the defendant's counsel contends the defendant should have been indicted, and under which he says that "the evidence might have justified a conviction," provides for the same punishment as Code § 26-2809, the section under which he was indicted.

The material part of the indictment which was drawn under Code § 26-2809, and whch was patterned after the forms approved in *Brandt* v. *State*, 71 *Ga. App.* 221 (30 S. E. 2d, 652); *Johnson* v. *State*, 203 *Ga.* 147 (45 S. E. 2d, 616); *Keys* v. *State*, 112 *Ga.* 392 (1) (37 S. E. 762), charges that the defendant "on the 1st day of June, 1938, with force and arms, having been entrusted by D. A. Eubanks, with four thousand three hundred fifty-six dollars and seventy-nine cents in money of the value of $4,356.79 and the property of the said D. A. Eubanks, for the purpose of applying the same for the use and benefit of said owner and person so entrusting the same, did after having been so entrusted, wrongfully, fraudulently and feloniously convert the said sum of money to his, the said accused's own use." It is not necessary in an indictment such as the one here drawn under Code § 26-2809 "to set forth the exact sum [of money] taken, if a sum covered by the indictment is proven to be embezzled; though it is not sufficient to prove at the trial a general deficiency in account. Some specific sum must be proved to be embezzled, in like manner as in larceny some particular article must be proved to have been stolen." 2 Wharton's Criminal Law (12 ed.), p. 1604, § 1293. It is stated in *Hagood* v. *State*, 5 *Ga. App.* 80, 84 (62 S. E. 641), that "It is well settled that the State is not compelled to prove, where separate items of larceny are charged in the indictment, every one of such items, or to prove, where an aggregate amount [of money] is charged to have been fraudulently converted by the defendant, the whole amount so charged."

In indictments for larceny, larceny after trust or embezzlement, where the property in question is money, as to the sufficiency of the description of it, an allegation of so many dollars and cents is sufficient. *Brooks* v. *State*, 47 *Ga. App.* 226 (170 S. E. 406); *Brooks* v. *State*, 178 *Ga.* 784 (175 S. E. 6); *Camp* v. *State*, 31 *Ga. App.* 737 (122 S. E. 249); Gady *v.* State, 83 Ala. 51 (3 So. 429). Our Supreme Court in *Jackson* v. *State*, 76 *Ga.* 551, 571, has said that "To specify particularly what money was received and embezzled would be impossible, and such a requirement would give impunity to the crime. No defaulting agent with the least shrewdness could ever be brought to trial or condemned, under these hard conditions, to punish-

ment. Evidence sufficient to convice could not be obtained, and the law would be a dead letter in the statute book." It is true that the indictment charges a conversion of a stated amount of money and the State must prove a conversion of the specific amount of money which is alleged in and covered by the indictment or a particular part of it just as in larceny some part of the money alleged to have been stolen must be proved. Here the indictment charges that the defendant was entrusted with $4,356.79, the property of D. A. Eubanks, "for the use and benefit" of the person who entrusted the money, thus the nature of the trust is sufficiently averred. *Keys* v. *State*, 112 *Ga.* 392 (supra); *Simmons* v. *State*, 79 *Ga. App.* 390 (53 S. E. 2d, 772); *Johnson* v. *State*, 203 *Ga.* 147 (supra); *Haupt* v. *State*, 108 *Ga.* 64 (33 S. E. 831). In the instant case several specific sums of the money which were particular parts of the money covered in the indictment were proved to have been embezzled prior to the time of the return of the true bill and within the statute of limitations by proving that the defendant, after having been so entrusted, wrongfully, fraudulently, and feloniously converted such money or a part thereof to his own use; that is, he converted one or more of such specific sums covered by the indictment and which were within the period of the statute of limitations next preceding the return of the indictment. The indictment here was drawn under Code § 26-2809 which is the same section under which the indictment in the *Haupt* case, supra, was drawn. Paraphrasing the language of that case, the moment *any money* was received by the defendant Lewis from any source to be applied to the benefit of D. A. Eubanks, a trust arose between the defendant and Eubanks and the defendant was, within the meaning of such statute (Code § 26-2809), entrusted with that fund.

We think that the indictment in this case comes within the provisions of Code § 27-701, that every indictment or accusation which states the offense in the terms and language of the Code or so plainly that the nature of the offense charged may easily be understood by the jury is sufficient, and makes the means of proof simple and direct and avoids the niceties in complicated pleading which in the past have enabled many guilty men to escape just punishment; and, while it thus pre-

serves the rights of the State, it imposes no burden or hardship upon the defendant. It deprives him of none of his rights and in no respect embarrasses him in defending himself against the charges preferred against him and enables him to vindicate himself upon meritorious grounds in the only way that vindication can be of any real value. "To escape by a technicality does not establish innocence, at least according to the enlightened and just estimate of the world, and does not restore the party to his former standing among his fellow-men." *Jackson v. State*, 76 *Ga.* 551 (supra). "The State is not bound to prove the commission of the offense charged in an indictment on the precise date alleged therein, but may prove its commission on any day within the statute of limitations." *Bryant v. State*, 97 *Ga.* 103 (1) (25 S. E. 450). Here the indictment was general in its descriptive averments and general in its nature, alleging a larceny after trust of $4,356.79 on June 1, 1948. Under such an indictment the State is permitted to give evidence showing the larceny after trust of such $4,356.79, or any part thereof, at any time within the four-year period of the statute of limitations. While the defendant must be prepared to answer for himself as to each occasion upon which the State may elect to prove the larceny after trust of the $4,356.79, or any part thereof, there is the resulting advantage to the defendant that but one judgment can be given upon this indictment; and, though he may have committed larceny after trust of many parts of such $4,356.79 on many occasions within the four-year period of the statute of limitations, a judgment under this indictment will protect him as to the $4,356.79 alleged, or any part thereof, whether mentioned in the evidence or not, for a plea of autrefois convict would be available to the defendant for a subsequent charge of the larceny after trust of the $4,356.-79, or any part thereof, irrespective of what evidence was introduced to convict him. If the defendant had been acquitted, a plea of autrefois acquit would be available to him. *Martin v. State*, 73 *Ga .App.* 573 (37 S. E. 2d, 411); *Jackson v. State*, 76 *Ga.* 573 (supra); *Webb v. State*, 177 *Ga.* 414 (170 S. E. 252); *Bryant v. State*, supra. The evidence authorized the verdict.

2. In ground 4 of the motion for new trial, as amended, complaint is made of the admission in evidence of the check

identified as State's Exhibit 1. This check was admissible for the purpose of tracing the funds specifically entrusted to the defendant for the designated purpose of applying them for the use and benefit of the owner and for the purpose of showing a fraudulent conversion thereof by the defendant. The evidence shows that the defendant misappropriated funds entrusted to him over a period of months, and therefore it was permissible for the State to trace and prove the successive conversions which cumulated to make up the aggregate misappropriations of the money alleged in the indictment.

3. Ground 5 complains of the admission in evidence of State's Exhibit 2. This evidence was admissible for the purpose of showing the system employed by the defendant in misappropriating the money from the pay-roll account and of showing a fraudulent conversion by him of a portion of the moneys included in the $174.97 shortage in the pay-roll account.

4. In ground 6 error is assigned upon the admission in evidence of State's Exhibit 3. This check was traced into the personal bank account of the defendant. The oral evidence in connection therewith revealed the defendant's system of commingling and juggling funds with which he was specifically entrusted and tended to show a fraudulent conversion thereof by the defendant.

5. Ground 7 complains of the admission in evidence of State's Exhibits 4-a and 4-b. These checks represent unauthorized increases in the defendant's own salary which he fraudulently gave himself, and were admissible for the purpose of tracing and showing a fraudulent conversion by the defendant of a portion of the funds included in the $174.97 shortage in the pay-roll account. The weekly pay-roll was made up by the defendant; and, employees, including himself, were paid by him. Mr. Eubanks testified, and an examination of the books revealed, that the defendant gave himself an increase in salary without the consent or authorization of his employer, Mr. Eubanks.

6. In ground 8 error is assigned upon the admission in evidence of the testimony of an expert, Clyde W. Chapman, a certified public accountant, regarding facts which could be ascertained only by an examination of a large number of entries

and details in the books kept by the defendant, on the ground that the books were the highest and best evidence. In his brief, counsel for the defendant contends further that the witness's testimony was inadmissible as there had been no showing that the books were complicated, or any showing that the books were accessible to the defendant and a full opportunity was afforded the defendant and his counsel to examine the same, and, consequently no proper foundation had been laid for the introduction of the expert testimony, as the books were never introduced in evidence.

The record shows that Chapman testified, after being qualified as an expert, that "all the books I examined are physically present in the court room at this time." "Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous detailed statements*—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper. Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available." 4 Wigmore On Evidence, (3rd ed.) p. 434, § 1230. "When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties." *Bitting* v. *State*, 165 *Ga.* 55 (139 S. E. 877); and see *Camp* v. *State*, 31 *Ga. App.* 737, 740 (6)

(supra); *Cabaniss* v. *State,* 8 *Ga. App.* 129 (68 S. E. 849); *Spence* v. *State,* 20 *Ga. App.* 61 (11) (92 S. E. 555).; *Young* v. *State,* 25 *Ga. App.* 562 (103 S. E. 804); Underhill, Criminal Evidence (4th ed.) p. 141, § 108. The books here in question were physically present in the court room (the expert witness informed the defendant while testifying) and the court had the power and authority to see that the defendant's counsel should have every reasonable opportunity to examine the books so that they might ascertain the correctness of the conclusions of the witness testifying as to the results of his examination of the originals and to use them on cross-examination. Since the books were at hand in the court room and the court had such authority over them, they were accessible to the defendant for such purposes or use, if he desired so to use them. 4 Wigmore On Evidence, p. 435, § 1230 and citations. Under the circumstances of this case, where the evidence shows that the books contained numerous and detailed entries and the books were physically present in the court room, and the defendant was so informed, we do not think that the court committed reversible error in permitting the expert accountant to testify as to the results of his examination of the books. There is no merit in this ground of the motion for a new trial.

7. The court charged the jury in part as follows: *"Now, gentlemen, the offense charged in this bill of indictment is that of larceny after trust. The law provides that any person who has been entrusted by another with any money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, or any other article or thing of value for the purpose of applying the same for the use and benefit of the owner or person delivering it, and who shall fraudulently convert the same to his own use shall be punished by imprisonment and labor in the penitentiary for not less than one year nor more than five years; except that where the money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce or any other article or thing of value, was fraudulently converted does not exceed $50 in value, the punishment shall be as for a misdemeanor.*

*"Now, gentlemen, there are three essential elements of the crime of larceny after trust, to wit: First, a person must have*

*been entrusted by another with money, note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce or some other article of value. In other words, there must be a bailment. Secondly, the purpose of the bailment. In other words, that the bailment was made for the use and benefit of the owner or the person delivering the property so entrusted. And there must be a fraudulent conversion of the property entrusted by the person to whom the same was so entrusted.*

"Now, gentlemen, I charge you that, if you believe beyond a reasonable doubt that at any time within four years next preceding the date that this bill of indictment was returned by the grand jurors named therein and was filed in this court, the defendant did in Fulton County, having been entrusted by D. A. Eubanks with $4,356.79 or any part thereof, and the property of the said D. A. Eubanks, for the purpose of applying the same to the use and benefit of the said D. A. Eubanks, and that he did, after having been so entrusted, wrongfully, fraudulently and feloniously convert the said sum of money or any part thereof to the defendant's own use, and you believe that beyond a reasonable doubt, you would be authorized to convict the defendant of the offense charged in this bill of indictment.

"Now, gentlemen, the defendant in this case contends that he is not guilty of the offense charged in this bill of indictment. He denies every material allegation in the indictment.

"The defendant contends that he was not entrusted with the money described in the indictment as charged therein, or with any part thereof. I charge you that, if this contention of the defendant is true, then the defendant would not be guilty of the crime charged in the indictment, and it would be your duty to acquit him.

"The defendant further contends that he has not fraudulently converted the money described in the indictment and as charged therein, or any part thereof. I charge you that if this contention is true, then the defendant would not be guilty of the offense charged in this bill of indictment, and it would be your duty to acquit him."

The objection in ground 10 is to the first italicized paragraph of the excerpt from the charge quoted above. It will be noted

that this part of the charge is in the language of Code § 26-2809 which defines larceny after trust and is the section under which the defendant was indicted. The ground of the objection is that the defendant being charged only with the fraudulent conversion of money, the court should have limited his charge in defining larceny after trust "to the specific sum of money alleged in the indictment" and should have excluded from such definition and charge, as applied to the facts of this case, the words, "note, bill of exchange, bond, check, draft, order for the payment of money, cotton or other produce, or any other article or thing of value." In *Keener* v. *State*, 18 *Ga.* 194, 230 it is stated: "It is the duty of the judge to declare to the jury what the law is, with its exceptions and qualifications; and then to state hypothetically, that if certain facts, which constitute the offence, are proved to their satisfaction, they will find the defendant guilty; otherwise, they will acquit him." In the present case the court charged the definition of larceny after trust verbatim as given in Code § 26-2809, and then qualified the definition as it related to the facts of this case by stating that the defendant in the indictment here was charged with the conversion of money and if the property converted was the money charged in the indictment and the other essential elements of the crime charged were established the jury would be authorized to convict the defendant; otherwise they would acquit him. In the last paragraph of the charge quoted above the court expressly told the jury that if the defendant had not fraudulently converted the money described in the indictment, or any part thereof, he would not be guilty of the offense charged in the indictment and it would be their duty to acquit him. In the last two paragraphs above quoted relative to the property alleged to have been entrusted to the defendant and the property alleged to have been fraudulently converted by the defendant, the court definitely and unmistakably restricts the finding of the jury to the money alleged in the indictment. *Thomas* v. *State*, 90 *Ga.* 437 (4) (16 S. E. 94); *Studdard* v. *State*, 59 *Ga. App.* 347 (5) (200 S. E. 816); *Thomas* v. *State*, 146 *Ga.* 346 (91 S. E. 109); *Martin* v. *Hale*, 136 *Ga.* 228 (2) (71 S. E. 133). This ground of the motion for a new trial is not meritorious.

8. In the absence of a request to charge we do not think that special ground 11 (complaining of the failure of the court to define a bailment) discloses reversible error, for the reasons urged. See, in this connection, *Birt* v. *State*, 1 *Ga. App.* 150 (57 S. E. 965); *Goodman* v. *State*, 2 *Ga. App.* 438 (58 S. E. 558); *Hamilton* v. *State*, 11 *Ga. App.* 41 (74 S. E. 446); *Lewis* v. *State*, 17 *Ga. App.* 667 (87 S. E. 1087); *Brandt* v. *State*, 71 *Ga. App.* 221 (30 S. E. 2d, 652). There is no merit in this ground.

The defendant relies strongly on the case of *Hoyt* v. *State*, 50 *Ga.* 313. In *Hays* v. *State*, 114 *Ga.* 25, 28 (40 S. E. 13), the court, in distinguishing the *Hoyt* case from the one there under consideration, said that in the Hoyt case "it was decided that evidence of the commission of an offense not charged in the indictment was not admissible," over objection. The instant case is differentiated from the *Hoyt* case in that the evidence here relates or bears directly upon the fact at issue and proves, or has a tendency to prove, the crime charged in the indictment. The evidence relates to the $4,356.79, or a part thereof, covered by the indictment.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*