33596.   BAILEY *v.* THE STATE.

DECIDED NOVEMBER 15, 1951.

840

*Harris, Henson, Spence & Gower,* for plaintiff in error.

*Paul Webb,* Solicitor-General, *C. O. Murphy, William Hall,* contra.

MACINTYRE, P. J. ■ The material part of the indictment, which was drawn under the provisions of Code § 26-2809 and patterned after the form approved in *Lewis* v. *State,* 82 *Ga. App.* 280, 286 (60 S. E. 2d, 663); *Brandt* v. *State,* 71 *Ga. App.* 221 (30 S. E. 2d, 652); *Johnson* v. *State,* 203 *Ga.* 147 (45 S. E. 2d, 616); *Keys* v. *State,* 112 *Ga.* 392 (1) (37 S. E. 762), charges that the defendant, "on the 10th day of July, 1947, with force and arms, having been entrusted by the Keystone Mutual Casualty Company, with forty-eight thousand three hundred eighty-six dollars and three cents in money of the value of $48,386.03 and the property of the Keystone Mutual Casualty Company, for the purpose of applying the same for the use and benefit of said owner and company so delivering the same, did after having been so entrusted, wrongfully, fraudulently and feloniously convert the said sum of money to their, the said accuseds' own use." (The defendant's father was jointly indicted, but not tried with the defendant in this case.)

It is not sufficient to prove at the trial a general deficiency in an account. It is true that the indictment charges the conversion of a stated amount of money and the State must prove a conversion of the specific amount of money which is alleged in and covered by the indictment, or a particular part of it, just as in larceny, some part of the money alleged to have been stolen must be proved. Here the indictment charges that the defendant was entrusted with $48,386.03, the property of the Keystone Mutual Casualty Company for the use and benefit of that company.

The jury was authorized to find that on May 28, 1946, the Southern States Insurance Corporation entered into an agency contract with the Keystone Mutual Casualty Company; paragraph 11 of that contract provided: "The agent [Southern States

Insurance Corporation] agrees that all premiums collected under policies of the company [Keystone Mutual Casualty Company] whether issued by the agent, subagents, brokers or otherwise and all other moneys or other property received or collected for or on behalf of the company shall be held by the agent for safe keeping and chargeable to the agent as a fiduciary trust, that all such premiums, other moneys, or other property, received or collected by the agent or by any subagent are the property of the company, that the agent shall in no case use such premiums, other moneys, or other property for the purpose of promoting or paying the expenses of the agency, or make personal or other use of same, and that the commissions payable under paragraph 9 thereof are debts due the agent of the company and the privilege, if granted, of deducting commissions from premiums under policies of the company shall not be a waiver by the company of its exclusive ownership therein." At the time of the execution of the contract, Col. Frank Bailey and the defendant, Frank Watson Bailey, were the sole owners of all the stock in the corporation, owning 10 and 5 shares respectively. They signed the agency agreement as president and secretary, respectively. At no time was any other person the owner of stock in the Southern States Insurance Corporation.

Where a principal authorizes an agent to receive money on its behalf from others, on receipt of the money, the agent is, in legal contemplation, entrusted by the principal with the money collected. *Waters* v. *State,* 82 *Ga. App.* 157 (60 S. E. 2d, 798); *Haupt* v. *State,* 108 *Ga.* 64 (33 S. E. 831); *Dukes* v. *State,* 52 *Ga. App.* 200 (182 S. E. 803); *Hagood* v. *State,* 5 *Ga. App.* 80 (6) (62 S. E. 641); *Battle* v. *State,* 7 *Ga. App.* 619 (67 S. E. 692); *Lewis* v. *State,* 82 *Ga. App.* 280 (60 S. E. 2d, 663).

The jury was further authorized to find that on May 1, 1947, at a time when the Southern States Insurance Corporation was insolvent, Col. Bailey contracted with Southern States Insurance Corporation to sell his 10 shares of stock to the corporation for the sum of $25,000. On May 15, the board of directors (composed of the defendant and Travis E. Dowling) authorized the defendant to pay $25,000 to Col. Frank Bailey for the purchase of the 10 shares of stock belonging to Col. Bailey. The corporation was not solvent at the end of the year 1946, and thereafter

never regained its solvency, and the bank accounts of the corporation were overdrawn on July 1, 1947, in the amount of $300.51. The last payment made by the corporation to the company of money collected for that company was in the amount of $630 in May, 1947. On June 3, 1947, the company sent to the corporation a telegram directing that no new business be written until further notice. The company (Keystone) was dissolved by court order on June 26, 1947. During the month of June, 1947, $19,655.64, representing premiums on policies against the company, was collected by the defendant as sole owner of the corporation as trustee of the company. None of this money was remitted to the company. The records of the corporation showed that during June, 1947, $19,000 of this $19,655.64 collected for the company, was paid to Col. Bailey by the defendant, which conversion by the defendant was fraudulent and in violation of his trust. The premiums collected for the company by the corporation were deposited in the Citizens & Southern National Bank. On June 16, 1947, the bookkeeper for the corporation at the direction of the defendant, drew a corporation check payable to cash in the amount of $10,000 and delivered it to the defendant. At the defendant's direction the stub of the check was marked as being paid to Col. Bailey. This check was signed by the defendant and his bookkeeper, and drawn on the Citizens & Southern National Bank, the bank in which the trust funds for the company were deposited. The defendant took this check to the Citizens & Southern National Bank and exchanged it for a cashier's check in the amount of $10,000, payable to himself. The defendant then went across the street to the First National Bank and cashed this cashier's check and got $10,000 in cash therefor, and paid this money on the purchase-price of his father's 10 shares of stock.

The jury was further authorized to find that after June 1, 1947, the defendant was the sole owner of Southern States Insurance Corporation, and that approximately $19,000 was withdrawn by him during that month from the funds with which he was entrusted by the Keystone Mutual Casualty Company.

"Under section 10 (d) of the corporation act of January 28, 1938 (Ga. L. Ex. Sess. 1937-38, pp. 214, 224; Code, Ann. Supp., § 22-1828 (d) ), a corporation is not authorized 'to purchase

. . shares of its own capital stock . . except from the surplus of its assets over its liabilities, including capital stock.' " *Brooks-Pruitt Tire Co.* v. *Brooks & Zuker Tire Co.*, 192 *Ga.* 644 (16 S. E. 2d, 423).

"An officer of a corporation may be guilty of embezzlement although the conversion is accomplished through the instrumentality of the corporation." 29 C. J. S. 703, § 26.

"In Ruling Case Law, vol. 7, p. 503, dealing with the subject of the criminal responsibility of officers for corporate acts, the author says: 'But an officer or agent cannot shield himself from criminal responsibility for his own act on the ground that it was done in his official capacity as an officer of the corporation, nor can he assert that acts in form corporate were not his acts merely because carried out by him through the instrumentality of a corporation which he controlled and dominated and which he employed for that purpose.' In the case of Milbrath *v.* State, 138 Wis. 354 (120 N. W. 252, 131 Am. St. Rep. 1012), cited by the authors of Ruling Case Law in support of the proposition above quoted, an officer of a corporation was held criminally liable for the misappropriation of funds which had been intrusted to the corporation. His defense that the corporation itself was an independent, responsible personality which intervened between himself as an officer of the corporation and the beneficiary of the trust fund was repudiated by the Supreme Court of Wisconsin, holding that the legal fiction of the personification of corporations has never been carried to the extent contended for by the accused in that case. In considering the personal liability of the officer of the corporation to the criminal law for the misappropriation done in the name of the corporation, the court said: 'The corporation is in such case a mere instrumentality through and by means of which the natural persons in control . . carry out their acts.' . . In the same case the court also said: 'In State ex rel. *v.* Standard O. Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145 [34 Am. St. Rep. 541], it was said that the legal fiction that a corporation is a person can never be urged to an intent and purpose not within the reason and policy of that fiction. Cases not within the reason and policy of that fiction must necessarily be rare, and no general rule that we are aware of has been in that respect formulated.

But it is safe to say that in a criminal prosecution against a person charged with an offense committed by him against the laws of the State he could not be heard to say in justification that he committed that offense in his official capacity as officer of a corporation; nor could he assert that acts in form corporate acts were not his acts merely because carried out by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose. Hempfling *v.* Burr, 59 Mich. 294 (26 N. W. 496).' " State *v.* Cooley, 141 Tenn. 33 (206 S. E. 182).

In the instant case, under one phase of the evidence, the jury was authorized to find that the specific sum of $10,000 was paid by the defendant from the trust funds of the Keystone Mutual Casualty Company to the defendant's father on the illegal purchase of his 10 shares of stock in the Southern States Insurance Corporation, the sale price of which totaled $25,000. This phase of the evidence alone would support a general verdict of guilty under the indictment as drawn, irrespective of the fact that the jury was authorized to find that a sum aggregating in excess of $100,000, with which the defendant and his father were specifically entrusted for a designated purpose beneficial to the Keystone Company, was systematically and fraudulently converted by the defendant and his father in pursuance of a criminal conspiracy between them to commit the offense of larceny after trust. Additionally, the jury was authorized to find that the defendant received a salary from November, 1946, through June, 1947, of $100 per week, which he knowingly and fraudulently caused to be paid out of the funds with which he was specifically entrusted. And, if the jury was authorized to find that the defendant was guilty of larceny after trust of any part of the money alleged in the indictment, the conviction must be affirmed. *Lewis* v. *State,* 82 *Ga. App.* 280, 286 (60 S. E. 2d, 663).

The defendant himself stated that, during the month of June, 1947, he was the sole stockholder of the Southern States Insurance Corporation, and whether as an officer or an agent of the corporation, he cannot shield himself from criminal responsibility for his own acts on the ground that they were done in his official capacity as an officer or agent of such corporation; nor can he

assert such acts in form corporate acts were not his acts merely because carried out by him through the instrumentality of the corporation which he controlled and dominated in all respects and which he employed for that purpose. The defendant should not be heard to say in this case that he committed the illegal acts in his official capacity as an official of the corporation, and on that ground escape criminal responsibility for his acts. We are of the opinion that the evidence authorized the verdict.

■ The amended motion for a new trial consists of one ground only, based upon "newly available" evidence. This newly available evidence consists of six checks payable to the Keystone Mutual Casualty Company, drawn upon the bank account of the Southern States Insurance Company, totaling $106,000. In this ground of the defendant's motion for a new trial it is alleged that Edward W. Shannon, who was called and sworn as a witness for the State on the trial, testified on the trial that he was an auditor employed by the liquidation division of the Pennsylvania Insurance Department; that "upon checking the unpaid account of Keystone [meaning Keystone Mutual Casualty Company] with Southern States [meaning Southern States Insurance Corporation] of premiums which were unpaid to Keystone but were paid to Southern States Insurance Corporation, less credit, there was an additional insolvency of about $106,000." It is further alleged in this ground of the motion that counsel for the State in his argument to the jury pointed to the defendant's failure to produce the checks, which the defendant alleges here were unavailable to him, as evidence of the defendant's guilt, and it is alleged that this demonstrates the controlling character of said evidence (the checks) and the influence which their absence from the evidence at the time of the trial must necessarily have on the jury in reaching the verdict.

The State on the hearing of the motion for a new trial presented its countershowing to this ground of the motion, which was supported by an affidavit of Edward W. Shannon to the effect that in his testimony on the trial he had considered the amounts covered by the checks, alleged to be newly available evidence, in arriving at the amount owed Keystone Mutual Casualty Company by the Southern States Insurance Corporation, and that in his computation he had credited the corporation

with the amounts of these checks offered as newly available evidence. The countershowing of the State referred to the tabulation of all payments received by Keystone from Southern States according to Mr. Shannon's records, and taking into account the dates on these newly available checks and the dates shown of Shannon's records of receipts of similar amounts together with the normal time which would be required for these checks to reach Pittsburgh from Atlanta, discloses that Shannon gave prompt credit for each of the newly available checks.

"It is pretty generally agreed, that it is incumbent on a party who asks for a new trial, on the ground of newly discovered evidence, to satisfy the court, 1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to the want of due diligence that he did not acquire it sooner. 3rd. That it is so material, that it would probably produce a different verdict. 4th. That it is not cumulative only, viz.: speaking to facts in relation to which there was evidence on the trial. 5th. The affidavit of the witness himself should be procured or its absence accounted for; and 6th. The new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." *Berry* v. *State*, 10 *Ga.* 511 (14).

In the instant case the judge in the exercise of his discretion was authorized to find that the newly discovered evidence did not satisfy him that it was not owing to the want of diligence that this evidence was not available at the time of the trial; that it was not cumulative only, namely, speaking to facts in relation to which there was evidence on the trial; that it was so material that it would probably produce a different result; or, in other words, he was authorized in finding that there was nothing in the record making it so clear and certain as not to admit of dispute that the court erred in overruling the motion, or to put it differently still, the record does not disclose that the judge abused his discretion in overruling the motion. *Taylor* v. *State*, 60 *Ga. App.* 594 (4 S. E. 2d, 484); *Hart* v. *State*, 207 *Ga.* 599 (63 S. E. 2d, 390); *Parks* v. *State*, 204 *Ga.* 41, 45 (48 S. E. 2d, 837).

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*